IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In the Matter of:** | **No:** |
| **Edward R. Martin, Jr.** | |
| **Respondent.** | |
| **A Member of the Bar of the** | **Notice of Removal** |
| **District of Columbia Court of Appeals** | **28 U.S.C. §§ 1331, 1441, 1442,** |
| **(Bar Registration No. 481866)** | **and 1446** |
| **Date of Admission: June 9, 2003** | |
| **Disciplinary Docket No. 2025-D047** | |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE:

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446, Respondent, Edward R. Martin, Jr., hereby gives notice of removal of this action from the District of Columbia Court of Appeals and the District of Columbia Board of Professional Responsibility and Hearing Committee Twelve to the United States District Court for the District of Columbia.

Respondent's counsel signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure and Respondent pleads the following in accordance

with the requirement of 28 U.S.C. § 1446(a) for a "short and plain statement of the grounds for removal.

In support of this Notice of Removal, the Respondent avers as follows:

**MR. MARTIN IS CURRENTLY SERVING AS A FEDERAL OFFICER**

1. Edward R. Martin, Jr. currently serves as Pardon Attorney (May 15, 2025-present). During the current Administration of President Trump, Mr. Martin has served as Acting United States Attorney for the District of Columbia (January 20, 2025-May 14, 2025); as Director of the Department of Justice's Weaponization Working Group (May 8, 2025-February 2, 2026); and as Associate Deputy Attorney General (May 14, 2025-January 1, 2026). All of the conduct to which this matter relates were for or relating to acts under color of Respondent's office as Acting U.S. Attorney for the District of Columbia and as contemplated by 28 U.S.C. § 1442(a)(1).

**THIS ACTION ARISES FROM ACTIONS TAKEN BY MR. MARTIN "IN AN OFFICIAL … CAPACITY," AND "UNDER COLOR OF SUCH OFFICE"**

**INTRODUCTION**

2. This case arises from an investigation by the acting U.S. Attorney for the District of Columbia into possible illegal or unethical behavior by D.C. Board on Professional Responsibility Bar Disciplinary Counsel, Hamilton Fox, III ("Disciplinary Counsel"). Disciplinary Counsel responded to the investigation, first, by opening a retaliatory investigation of Mr. Martin and then by filing a

statement of charges against him before the District of Columbia Court of Appeals'[DCCA] Board on Professional Responsibility.

3. The case is being removed to this Court because Mr. Martin is entitled to a federal forum for the adjudication of his federal defenses. The orders Disciplinary Counsel seeks from the DCCA seek review of Mr. Martin's discretionary exercise of the Executive Power of the United States while acting as U.S. Attorney for the District of Columbia. Mr. Martin therefore seeks an Article III forum in which to raise the serious federal constitutional and statutory defenses listed below.

4. This proceeding asks for the adjudication of the merits of serious federal constitutional and statutory defenses to actions by D.C. Disciplinary Counsel, an employee of the District of Columbia Court of Appeals, who has initiated a retaliatory action in that Court's inferior administrative adjudicatory bodies, which refuse to follow applicable federal statutes and codes concerning judicial conduct, against a federal officer arising from the exercise of his official duties under federal law and pursuant to Executive Orders.

### THE FEBRUARY 7, 2025, INQUIRY INTO THE CONDUCT OF D.C. DISCIPLINARY COUNSEL

5. This case arises from two areas of investigation by initiated by Mr. Martin in his capacity as Acting U.S. Attorney for the District of Columbia.

6. The first investigation was commenced in a February 7, 2025, letter in which Mr. Martin, acting in his official capacity as the acting U.S. Attorney [hereafter "U.S.A Martin" or "Mr. Martin"], initiated an investigation into allegations that D.C. Disciplinary Counsel, Hamilton P. Fox, III, was abusing his public trust by engaging in allegedly illegal and unethical conduct by "target[ing] individuals" for Bar discipline. *See* Executive Order 14147, "Ending the Weaponization of the Federal Government," 90 Fed. Reg. 8235 (January 20, 2025). **Exhibit 1**, Letter from Edward R. Martin, Jr., United States Attorney, to Hamilton P. Fox, III dated February 7, 2025.

7. Mr. Fox responded to the letter without providing the requested information, asserting his office was "an arm of the D.C. Court of Appeals" and referred Mr. Martin to DCCA Rule XI. **Exhibit 2**: Letter from Hamilton P. Fox, III to Edward R. Martin, dated February 25, 2025.

8. Given this response, Mr. Martin replied to Mr. Fox with a cc to DCCA Chief Judge, The Honorable Anna Blackburne-Rigsby, seeking the Chief Judge's assistance in "clarifying [Mr. Fox's] irregular public conduct." In that correspondence, U.S.A. Martin observed (correctly) that that Mr. Fox's "letter does not answer my specific inquiries" even though Mr. Martin had provided Mr. Fox "with specific examples of [his] public interactions." **Exhibit 3**: Email from Martin to Fox and Blackburne-Rigsby, dated March 5, 2025.

9. Shortly thereafter U.S.A. Martin again sought answers to the questions he had posed to Mr. Fox concerning the subject matter of his investigation and once again sought the assistance of the Chief Judge in getting an "answer to my letter and my inquiries." **Exhibit 4**: Email from Martin to Fox and Blackburne-Rigsby dated March 6, 2025.

10. After not receiving answers to his inquiries, U.S.A. Martin contacted the Chief Judge on March 28, 2025, with a further example of the object of his inquiry, informing the Chief Judge of his view that Mr. Fox was creating a crisis by his conduct. **Exhibit 5**: Letter from Martin to The Honorable Anna Blackburne-Rigsby with cc: to Fox, dated March 28, 2025.

11. Mr. Fox was a recipient of all the of the correspondence referenced above, either directly or as a copied party.

### THE FEBRUARY 27, 2025, U.S. ATTORNEY COMPLIANCE INQUIRY INTO GEORGETOWN UNIVERSITY'S DEI PROGRAMS

12. The second investigation opened by U.S.A. Martin was an inquiry in a letter dated February 17, 2025, directed to the then-Dean William M. Treanor of the Georgetown University Law School. This inquiry ran concurrently with Mr. Martin's investigation into the conduct of Mr. Fox.

13. Mr. Martin's letter to Dean Treanor requested information and clarification concerning Georgetown University Law School's ongoing implementation and

enforcement of allegedly illegal or otherwise non-compliant Diversity, Equity, and Inclusion ("DEI") policies covered by Executive Order 14141, "Ending Radical and Wasteful Government DEI Programs and Preferencing," 90 Fed. Reg. 8339 (January 20, 2025). **Exhibit 8**: Letter of U.S.A. Martin to Dean Trainor of Georgetown University Law School dated, February 17, 2025.

14. Dean Treanor responded to U.S.A. Martin on March 6, 2025, with a defense Georgetown's policies. **Exhibit 9:** Letter from William M. Treanor to Edward R. Martin, Interim U.S. Attorney, dated March 6, 2025.

15. The Dean apparently chose to publicize Mr. Martin's official inquiry and the Law School's response, as reflected in an Associated Press article released the same day. *See* Associated Press, "Georgetown law dean rebuffs DEI warning from top federal prosecutor for DC" at https://apnews.com/article/trump-dei-georgetown-ed-martin-9bff842ed5ca3e4600de52ca6967fe9d (March 6, 2025) (accessed April 7, 2026).

16. On March 10, 2025, a California resident, who graduated from Georgetown Law and who is now a retired local judge, sent a detailed, five (5) page letter to Mr. Fox recommending an investigation of Mr. Martin for ethics violations. ("Argento Complaint") **Exhibit 10:** Letter of Phillip Argento to Disciplinary Counsel dated March 10, 2025.

6

**RETALIATION AND INTERFERENCE WITH A FEDERAL INVESTIGATION**

17. Eighteen days later, on March 28, 2025, Mr. Fox, acting on his own motion in his official capacity as Disciplinary Counsel, retaliated against Respondent by initiating a Disciplinary Counsel investigation of U.S.A. Martin, without having provided any responses to Mr. Martin's questions. This Disciplinary investigation was opened by Mr. Fox with full knowledge that Mr. Martin was at that time conducting an official investigation into Georgetown University Law School's allegedly illegal or otherwise non-compliant DEI programs, as well as into allegations that Mr. Fox had abused his authority. *See* **Exhibit 6:** Letter of March 28, 2025, from Hamilton P. Fox, III to Edward R. Martin, Interim United States Attorney (initiating ethics investigation).

18. In a letter to the full D.C. Court of Appeals, dated March 31, 2025, with a copy to the White House Counsel, U.S.A. Mr. Martin expanded his complaint against Mr. Fox's allegedly unprofessional conduct, noting that the Argento complaint that Mr. Fox docketed as an investigation was about "an ongoing matter in my office." **Exhibit 7:** Letter from Edward R. Martin, U.S. Attorney to the Honorable Anna Blackburn Rigsby, the Hon. Stephen H. Glickman, the Hon. Vanessa Ruiz, the Hon. John M. Steadman, the Hon. Phyllis D. Thompposon, and the Hon. Eric T. Washington, dated March 31, 2025.

19.   Disciplinary Counsel then escalated the matter by filing formal disciplinary charges stemming from Mr. Martin's official conduct: "Mr. Martin's conduct …." Violated the following District of Columbia Rules of Professional Conduct. **Exhibit 11**: Petition Instituting Formal Disciplinary Proceedings in the District of Columbia Court of Appeals Board on Professional Responsibility.

## FEDERAL CONSTITUTIONAL AND STATUTORY DEFENSES
## PRELIMINARY STATEMENT

20. The charges against Mr. Martin are a frontal attack on the discretionary power of a U.S. Attorney to investigate suspected violations of law and are thus removable under 28 U.S.C. §1442(a). These charges also infringe on federal supremacy and separation of powers in that the operation of the national government and the President's exercise of his authorities under the Take Care Clause through his U.S. Attorneys cannot be interfered with or hobbled by harassing and pretextual enforcement actions by a politically hostile municipal Disciplinary Counsel who derives his power from the District of Columbia Court of Appeals.

21. In addition, the President of the United States is the client of all attorneys appointed pursuant to the President's Article II authority, and every executive branch attorney is bound by the President's decisions concerning the objectives of the representation defined by their respective appointments. The District of Columbia is barred by separation of powers and federal supremacy from review

of actions taken by a U.S. Attorney seeking to execute the President's enforcement priorities.

**MR. MARTIN IS ENTITLED TO AN ARTICLE III FORUM IN WHICH TO RAISE THE FOLLOWING FEDERAL CONSTITUTIONAL AND STATUTORY DEFENSES**

22. The federal officer removal statute, 28 U.S.C. § 1442(a) and case law are unequivocal: federal officers are entitled to remove their cases from a State or the District of Columbia to a federal forum whenever the federal officer plausibly asserts a "colorable federal defense" to the proceeding. *Mesa v. California*, 489 U.S. 121, 129 (1989). The federal defenses presented here are:

1. The charges against Mr. Martin infringe on federal supremacy because they are a frontal attack on the discretionary power of a U.S. Attorney to investigate suspected violations of law. 28 U.S.C. §§ 546-547.

2. The charges against Mr. Martin also infringe on federal supremacy in that the operation of the national government and the President's exercise of his authorities under the Take Care Clause through his U.S. Attorneys cannot be or interfered with or hobbled by harassing and pretextual enforcement actions by a politically hostile District of Columbia Disciplinary Counsel.

3. The President is the client of all attorneys appointed pursuant to the President's Article II authority, and every executive branch attorney is

bound by the President's decisions concerning the objectives of the representation defined by their appointment, such that the District of Columbia's Disciplinary Counsel's attempt to review the discretionary execution of the President's orders infringes on the Executive power of the President.

4. The charges against Mr. Martin likewise violate the Separation of Powers because they are a frontal attack on the discretionary power of a U.S. Attorney to investigate suspected violations of law by the District of Columbia, an Article I local government created by Congress pursuant to the Seat of Government Clause, U.S. Const. art. I §8 cl. 17.

5. Disciplinary Counsel's Charges filed March 6, 2026, and served March 9, 2026, [**Exhibit 11**] are nothing less than an act of interference with the federal investigation of which he was a target, initiated February 7, 2025, by attempting to stop the progress of an authorized federal investigation undertaken by the Acting United States Attorney for the District of Columbia. At the time of the opening of the ODC investigation: 1) an investigation involving Disciplinary Counsel's activities was underway; 2) Disciplinary Counsel knew of the investigation; 3) Disciplinary Counsel attempted to stop or otherwise to interfere with the investigation; and 4) the charges are beyond the scope of the authority of Disciplinary

Counsel, in that they are an illegal attempt to require Mr. Martin to litigate before a Hearing Committee appointed by the D.C. Board on Professional Responsibility federal questions relating to the meaning of the civil rights laws and other federal laws; the First Amendment claims and defenses of Georgetown University; an examination of Catholic religious doctrines; and the power of the U.S. Attorney to inquire into allegedly illegal or unethical behavior of Disciplinary Counsel himself.

6. The March 6, 2026, Disciplinary Charges served on Mr. Martin on March 9, 2026, are an attempt to attack, impede and/or thwart the Discretionary Power of a U.S. Attorney to investigate suspected violations of law. The federal questions raised by the charges against Mr. Martin are thus also removable under 28 U.S.C. §§ 1331, 1441, and 1446.

7. Removal is also proper under 28 U.S.C. §§ 1331, 1441, and 1446, because the pretextual "disciplinary" charges are disguised civil claims against Mr. Martin that arise under the constitution and laws of the United States as to which Mr. Martin is entitled to assert federal defenses, including those relating to the jurisdiction of the court.

8. The Due Process Clause of the Fifth Amendment guarantees Mr. Martin the right to be prosecuted by a "disinterested" prosecutor. Prosecution by someone with conflicting loyalties 'calls into question the objectivity of

11

those charged with bringing a defendant to judgment." (internal citation omitted). It is a fundamental premise of our society that the state wield its formidable law enforcement powers in a rigorously disinterested fashion, for liberty or property may be at stake in such matters. We have always been sensitive to the possibility that important actors in the criminal justice system may be influenced by factors that threaten to compromise the performance of their duty. *Young v. United States ex rel. Vuitton Et Fils SA.*, 481 U.S. 787, 810 (1987) (plurality opinion); *see generally Berger v. United States*, 295 U.S. 78 (1935). This right is fundamental to the justice system as echoed in Young because "for what is at stake is the public perception of the integrity of the justice system. 'Justice must satisfy the appearance of justice,' and a prosecutor with conflicting loyalties presents the appearance of precisely the opposite." *Young*, 481 U.S. at 811- l 812 (1987) (cite omitted). Further, allowing an "interested" prosecutor to conduct an investigation would "give unfair advantage to [the prosecutor's personal interests] and would impair public willingness to accept the legitimate use of those powers." C. Wolfram, MODERN LEGAL ETHICS 460 (1986).

9. Mr. Fox has a conflict of interest with respect to the prosecution of Mr. Martin because he was himself under investigation by Mr. Martin when

he launched his investigation of Mr. Martin and when he filed formal charges.

10. Disciplinary Counsel was required to disqualify himself from participating in any proceeding involving Mr. Martin on or after February 7, 2025, when Mr. Martin informed Mr. Fox that he was the subject of an investigation by the U.S. Attorney's office. Disciplinary Counsel, who is appointed by the Board and whose authority is conferred and supervised by the District of Columbia Court of Appeals, is by extension bound by the ethical rules applicable to federal judges as an employee of the court. *See* Appendix A of the DC Code of Judicial Conduct referencing the federal Code of Conduct for Judicial Employees as a source for guidance. This includes required, but ignored, application of 28 U.S.C. §455(a). If Disciplinary Counsel Fox is not bound by judicial ethics, then he is bound by the ethical obligations of federal prosecutors.

11. The authority of the Board on Professional Responsibility and its Hearing Committees to conduct hearings, make findings of fact, and draw conclusions of law on matters of attorney discipline has been conferred by the District of Columbia Court of Appeals, an Article I court. While these bodies are bound by the 2018 Code of Judicial Conduct of the District of Columbia, 28 U.S.C. §455(a), and the ABA Code of Judicial Conduct,

they do not consider themselves so bound, nor do they conduct themselves according to these strictures in executing their hearing procedures. Rather, the Board and its Hearing Committees operate under their own procedures which do not comport with otherwise applicable codes of judicial conduct. This means that Respondent's constitutional right to a hearing by a body that follows federal statutory requirements to avoid bias and the appearance of bias has been disregarded, and that the adjudication of Mr. Martin's constitutionally protected property rights cannot comply with the requirements of the Due Process Clause of the Fifth Amendment.

12. The District of Columbia cannot compel Mr. Martin to testify or to produce official Department of Justice records in violation of the following privileges:

   a. Executive Privilege;

   b. Law Enforcement Privilege;

   c. Attorney-Client Privilege; or

   d. Deliberative Process Privilege.

13. The disciplinary powers of the District of Columbia Court of Appeals arise exclusively from District of Columbia Court Reform and Criminal Procedure Act of 1970, Public Law 91-358, *codified as revised in* D.C. Code, Chapter 11, as amended.

14. 28 U.S.C. §530B is not a forum selection or jurisdictional rule but is instead a choice of law rule that neither expands the disciplinary authority of the District of Columbia Court of Appeals, nor "in any way [alters] federal substantive, procedural, or evidentiary law …" 28 C.F.R. §77.1(b).

15. The disciplinary process created by the District of Columbia Court of Appeals is unconstitutional because it is not authorized by statute and because:

   a. The Members of the Board on Professional Responsibility and its subordinate Hearing Committees are not validly appointed pursuant to U.S. Const. art. II.

   b. Disciplinary Counsel is not validly appointed pursuant to U.S. Const. art. II.

   c. Neither the Members of the Board on Professional Responsibility, its subordinate Hearing Committees, nor Disciplinary Counsel have taken the oath of office required by U.S. Const. art. VI.

   d.  The Code of Ethics and recusal procedures governing the D.C. Board on Professional Responsibility, its subordinate Hearing Committees, and Disciplinary Counsel do not comply with federal law or the Constitution.

e. The Reorganization Act does not authorize the Court of Appeals to delegate any part of its power to hear and decide cases involving the discipline of lawyers to the Board on Professional Responsibility.

16. Mr. Martin is entitled to official immunity or qualified immunity, which the retaliatory charges are seeking to evade by filing them in an inappropriate forum. Mr. Martin is further entitled to interlocutory appeals of trial court rulings on these defenses. The D.C. Bar disciplinary process is inconsistent with federal law in that it denies federal officers interlocutory appeals on their federal statutory and constitutional defenses.

17. The ODC charges filed against Mr. Martin are part of a pattern and practice of political viewpoint discrimination against licensed professionals in violation of the First Amendment. *See Chiles v. Salazar*, 607 U.S. ---, 2026 WL 872307 (March 31, 2026).

18. ODC's demand that Mr. Martin respond "point by point" to Phillip Argento's arguments based on Catholic doctrinal teaching on the morality of DEI policies constitutes a religious test for public office or professional licensure forbidden by Article VI. *See* **Exhibit 6,** Letter from ODC to Edward R. Martin, Interim U.S. Attorney dated March 28, 2025, at p. 2.

19. The ODC's pretextual charges seeking to develop and adjudicate the content of Catholic Doctrine in the context of DEI violate the D.C. Human

16

Rights Act and discriminate against respondent on the ground of political affiliation and belief.

20. Whether DEI policies at Georgetown University Law Center are lawful or protected by the First Amendment are federal questions removable under 28 U.S.C. §1331, 1441, and 1446.

21. Pursuant to 28 U.S.C. § 1446(a), Respondent's counsel hereby attaches as Exhibits hereto a copy of all process, pleadings, and orders served on him in connection with Charges, namely:

1. Disciplinary Counsel's Petition Instituting Formal Disciplinary Proceedings in the District of Columbia Court of Appeals Board on Professional Responsibility [**Exhibit 11**];

2. Mr. Martin's Answer [**Exhibit 12**]; and

3. Hearing Committee Order dated April 2, 2026 [**Exhibit 13**].

Respectfully submitted this 7 day of April, 2026.

<u>*/s/ Christopher A. Byrne, Esq.*</u>
Christopher A. Byrne, Esq.
DC Bar No. 928424
Byrne Law PLLC
1050-30th St Northwest
Washington, DC 20007
(202) 487-6800
cabesq@protonmail.com

17

*Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach,
LLP
6 Concourse Parkway, Suite 2400
Atlanta, Georgia 30328
(404) 843-1956
hmacdougald@ccedlaw.com

Application for *pro hac vice*
forthcoming

*Robert A. Destro*
Robert A. Destro
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

Application for *pro hac vice*
forthcoming

## CERTIFICATE OF SERVICE

I certify in accordance with F.R.Civ.P. 11 and 42 U.S.C. §6(a) and (d), that a copy of this Notice of Removal Pursuant to 28 U.S.C. §§ 1442(a)(1), 1331, 1441, and 1446 was filed with the Clerk of the District of Columbia Court of Appeals on **April 7, 2026,** and that copies of the Notice of Removal were also served on **April 7, 2026** on the District of Columbia Board of Professional Responsibility, on the Chair of Hearing Committee 12, and on Disciplinary Counsel Hamilton P. Fox III.

*/s/ Christopher A. Byrne, Esq.*
Christopher A. Byrne, Esq.

**All Exhibits**

**Exhibit 1**

OFFICE of DISCIPLINARY
COUNSEL

FEB 2 4 2025

RECEIVED



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C. 20530*

February 7, 2025

Mr. Hamilton P. Fox, III
DC Bar
901 4th Street, NW,
Washington, DC 20001

Dear Sir,

As United States Attorney for the District of Columbia, I receive requests for information and clarification. I take these requests seriously and act on them with letters like this one you are receiving.

At this time, I have received a specific request about how the DC bar operates with regard to disciplinary investigation and actions. In particular, I have been asked about how you target individuals based not on personal knowledge for a basis of a complaint but instead based on a policy or political disagreement. Please see the two attached documents that seem to indicate some sort of policy.

However, public reports of your conduct compared with these two documents is inconsistent. For example, in some instances you have clearly not abided by the "personal knowledge" requirement and instead fallen into political motive: see, for example, your use of the Senator Dick Durbin complaint to open complaints against DC Bar members.

At this time, I inquire about two topics specifically:

First, do you have a written policy that you can share which indicates how you are even-handed in your policies? This would include something that explains how you limit the targeting of individuals who you may disagree.

Second, will you describe for me exactly how you handle the clearly politically motivated attacks that come from certain "public interest" groups? What has become clear in their own literature and public announcements is that these groups are simply political hit squads looking to damage the Bar. I assume that you have addressed this because it is a serious problem that is damaging our Bar as well as others across the country

I look forward to your cooperation with my letter of inquiry after requests. Thank you in advance for your assistance with this. Please respond by February 21, 2025. Should you have further questions regarding this matter, please do not hesitate to call my office or schedule a time to meet in person.

Thank you and

All the best.

Edward R. Martin, Jr.

Attachments

**Exhibit 2**



# OFFICE OF DISCIPLINARY COUNSEL

**Hamilton P. Fox, III**
*Disciplinary Counsel*

**Julia L. Porter**
*Deputy Disciplinary Counsel*

*Senior Assistant Disciplinary Counsel*
Jack Metzler
Becky Neal

*Assistant Disciplinary Counsel*
Caroll G. Donayre
Jerri U. Dunston
Lisa M. Fishelman
Dru M. Foster
Jason R. Horrell
Ebtehaj Kalantar
Jelani C. Lowery
Sean P. O'Brien
Melissa J. Rolffot
William R. Ross
Mariah K. Shaver
Traci M. Tait
Cynthia G. Wright

*Investigative Attorney*
Azadeh Matinpour

*Senior Staff Attorney*
Lawrence K. Bloom

*Staff Attorney*
Arquimides R. Leon
Angela M. Walker

*Manager, Forensic Investigations*
Charles M. Anderson

February 25, 2025

Edward R. Martin, Jr., Esquire
United States Attorney for the
 District of Columbia
Patrick Henry Building
601 D Steet, N.W.
Washington, D.C. 20530

Dear Mr. Martin:

Your letter of February 6, 2025 was sent to the wrong address and was not forwarded to me until February 24.

You appear to be under the impression that the Office of Disciplinary Counsel is a part of the D.C. Bar. We are not; we are an arm of the District of Columbia Court of Appeals and are governed by the rules of that court and the rules of its Board on Professional Responsibility. The Rules governing the Board, our office and investigations, and the Rules of Professional Conduct can be found at https://www.dcbar.org/attorney-discipline/board-on-professional-responsibility/rules-of-the-board-on-professional-responsibility. The Court's Rule XI and the Board of Professional Responsibility's rules address the standards for bringing disciplinary charges, and I refer you to them.

Very truly yours,

*Hamilton P. Fox, III*
Hamilton P. Fox, III

HPF:act

*Serving the District of Columbia Court of Appeals and its Board on Professional Responsibility*

*515 5ᵗʰ Street NW, Building A, Room 117, Washington, DC 20001 ▪ 202-638-1501, FAX 202-638-0862*

**Exhibit 3**

**From:** Martin, Edward (USADC) ███████████████████
**Sent:** Wednesday, March 5, 2025 12:34 PM
**To:** Phil Fox ██████████████
**Cc:** Blackburne-Rigsby, Anna ███████████████████████
**Subject:** Re: Response to your letter

Thank you for clarifying that you are an arm of the Court of Appeals. That's helpful for clarifying your irregular public conduct. Adding the Chief Judge to assist us in this important matter.

Your letter does not answer my specific inquiries. I o provided you with specific examples of your public interactions.

Please answer my inquiries asap.

All the best.

Ed

Ed Martin

US Attorney for DC

**From:** Phil Fox ███████████████████
**Sent:** Wednesday, March 5, 2025 12:12:41 PM
**To:** Martin, Edward (USADC) ███████████████████████
**Subject:** [EXTERNAL] Response to your letter

https://protect2.fireeye.com/v1/url?k=91038749-f44fee19-9104a3ac-74fe48677126-155c00077dafab42&q=1&e=fa58ae40-d591-4472-b97f-54fc5fe622e9&u=https%3A%2F%2Facrobat.adobe.com%2Fid%2Furn%3Aaaid%3Asc%3AVA6C2%3A7601d6eb-7ccc-4c93-8ec1-1edcaa98b298

James Phalen informs me that you have apparently not received the letter that I mailed to you last week. Here is a copy.

**The third page of this document is blank.**

**Exhibit 4**

**Thursday, June 12, 2025 at 11:37:25 AM Eastern Daylight Time**

**Subject:** Fwd: Response to your letter
**Date:** Wednesday, June 11, 2025 at 6:38:20 PM Eastern Daylight Time
**From:** Ed Martin

*Ed Martin*

---------- Forwarded message ---------
From: **Martin, Edward (USADC)** ████████████████
Date: Thu, Mar 6, 2025 at 12:05 PM
Subject: RE: Response to your letter
To: Phil Fox ████████████████
CC: Blackburne-Rigsby, Anna ████████████████████

Phil and Chief Judge,

My comms team just informed me that the Washington Post is writing about your office and the issues surrounding you and your efforts on behalf of Sen. Durbin. I refused any comment from us.

I expect that if you have shared my letter with them (as they implied you did), Phil, that you clarify that my letter came with attachments that are all letters from your office to two citizens and the Sen. Durbin letter to you upon which you relied for the complaint against the DC Bar member. You may have seen that Sen. Durbin, encouraged by your effort on his behalf, is now sending letters to the NY Bar disciplinary folks to push his agenda. All of this make me ask you again to answer my letter and my inquiries. Thank.

Also, please note that the fact that my secretary used the incorrect address on my letter to you should not be used to demean her work.

Thanks.

All the best.

Ed

1 of 3

**Exhibit 5**



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20530

March 28, 2025

The Honorable Anna Blackburne-Rigsby
Chief Judge
District of Columbia Court of Appeals
430 E. Street, NW
Washington, DC
Via EMAIL: ██████████████████████.
    CC: Fox█████████████.

Dear Chief Judge,

I am supplementing my Complaint Against Mr. Hamilton Phil Fox by sending you the attached document. The document came to my attention after some of the recent public coverage.

It appears to me based on this document that Mr. Fox is compromised regarding his investigation of Jeff Clark. I believe this investigation is before you right now. I point you to page 4 and page 52 of the document where Mr. Fox uses mob-like language to threaten that he will "ratchet up" an investigation of the subject invokes certain defenses. This is problematic and I respectfully request that you to investigate Mr. Fox.

To re-state the thrust of my Complaint against Mr. Fox, Mr. Fox is regularly confusing members of the legal community with his uneven public positioning of his office and his public conduct. As I mentioned before, he has publicly said that he would not open investigations without personal knowledge of activity but then contradicted that when the complaint came from a public official without personal knowledge. This is confusing and counterproductive.

The animus showed in the attached document is in line with reports I have heard from my own staff about Mr. Fox and his office. This is not a collaborative or helpful dynamic and it appears to be of Mr. Fox's doing.

To be candid, Judge, you have a crisis on your hands because of him. In a time where we have so much need for collaboration between all parties with regard to the issues facing our community and your court, he is dividing us.

I look forward to hearing from you on this important matter.  (I am cc'ing Mr. Fox on this for transparency since the Complaint Against Mr. Fox relates to him.)

All the best.

Sincerely,

Edward R. Martin, Jr.
United States Attorney for the District of Columbia

**Exhibit 6**

| **From:** | Angela Thornton |
| **To:** | Edward.Martinjr@usdoj.gov |
| **Cc:** | Phil Fox |
| **Subject:** | in re Martin/Argento; Disciplinary Docket No. 2025-D047 |
| **Date:** | Friday, March 28, 2025 3:30:00 PM |
| **Attachments:** | BLetter to Martin.pdf |

Dear Mr. Martin:  per Mr. Fox, please see the enclosed material that contains allegations about your conduct which require Disciplinary Counsel to obtain information pursuant to D.C. Bar Rule XI, § 8, a rule of the District of Columbia Court of Appeals.  Respond via email or letter no later than April 14, 2025.  Thank you.

Regards,

*Angela*

Angela C Thornton
  Assistant to Hamilton P. Fox, III
  Disciplinary Counsel



# OFFICE OF DISCIPLINARY COUNSEL

Hamilton P. Fox, III
*Disciplinary Counsel*

Julia L. Porter
*Deputy Disciplinary Counsel*

*Senior Assistant Disciplinary Counsel*
Jack Metzler
Becky Neal

*Assistant Disciplinary Counsel*
Caroll G. Donayre
Jerri U. Dunston
Lisa M. Fishelman
Dru M. Foster
Jason R. Horrell
Ebtehaj Kalantar
Jelani C. Lowery
Sean P. O'Brien
Melissa J. Rolffot
William R. Ross
Mariah K. Shaver
Traci M. Tait
Cynthia G. Wright

*Investigative Attorney*
Azadeh Matinpour

*Senior Staff Attorney*
Lawrence K. Bloom

*Staff Attorney*
Arquimides R. Leon
Angela M. Walker

*Manager, Forensic Investigations*
Charles M. Anderson

**<u>CONFIDENTIAL</u>**

Edward R. Martin, Jr., Esquire
Interim United States Attorney
District of Columbia

**Via email only to:** ████████████████████

Re:   Martin/Argento
Disciplinary Docket No. 2025-D047
***Please respond by:  April 14, 2025***

Dear Mr. Martin:

The enclosed material contains allegations about your conduct which require Disciplinary Counsel to obtain information pursuant to D.C. Bar Rule XI, § 8, a rule of the District of Columbia Court of Appeals.

Rule XI, § 2(b) defines "misconduct" to include "acts or omissions of an attorney . . . which violate the attorney's oath of office . . . ."  The oath to which attorneys must swear or affirm in order to be admitted to the District of Columbia Bar includes, "that I will support the Constitution of the United States of America."  Disciplinary Counsel's decision to investigate your conduct is based upon the enclosed letter, dated February 17, 2025, which you sent to William M. Treanor, Dean of Georgetown Law, and the enclosed letter dated March 10, 2025 from the Honorable Phillip J. Argento.  D.C. Bar Rule XI, § 6(a)(2), provides:

> Disciplinary Counsel shall have the power and duty . . . [t]o investigate all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of this Court which may come to the attention of Disciplinary Counsel or the Board [on Professional Responsibility] from any source whatsoever, where the apparent facts, if true, would warrant discipline.  Except in matters requiring dismissal because the complaint is clearly unfounded on its face or falls outside the disciplinary jurisdiction of the Court, no dispositions shall be recommended or undertaken by Disciplinary Counsel until the accused attorney shall have been afforded an opportunity to respond to the allegations.

At this stage, Disciplinary Counsel has not taken any position regarding the validity of the allegations.

Edward R. Martin, Jr., Esquire
Interim United States Attorney
Martin/Disciplinary Counsel
Disciplinary Docket No. 2025-D047
Page 2

Please provide a substantive, written response to Judge Argento's letter and the following questions:

1. Your letter refers to "DEI," which I take it to be "Diversity, Equity, and Inclusion." You say that it has "reliably" come to your attention that Georgetown Law teaches and promotes DEI. Identify the source of your information and explain precisely what it is that is being taught or promoted to which you object.

2. How is it consistent with your oath to support the Constitution to direct the acceptable curriculum of a private educational institution?

3. How is it consistent with your oath to support the Constitution to direct what a school affiliated with a religious institution may teach?

4. How is it consistent with your oath to support the Constitution to deny employment to the students and graduates of an accredited law school unless you approve of that law school's curriculum and teaching methodology?

*If your response is submitted by counsel on your behalf, please include a signed verification stating that you have read the written response and attest to its accuracy.* If you have a question, please contact me at ██████████ or by email at ██████████. Please use the above disciplinary docket number in all correspondence with this office.

This matter is confidential at this stage except for necessary disclosures in the course of our investigation. You, however, have the right to make the information public and, of course, consult with counsel.

Please be aware that the District of Columbia Court of Appeals has approved discipline based on a violation of Rule 8.4(d) of the D.C. Rules of Professional Conduct (conduct that seriously interferes with the administration of justice) where the attorney failed to comply with Disciplinary Counsel's request for information. Moreover, your cooperation will contribute to the resolution of this matter in a manner that safeguards the rights of the public and protects attorneys from unfounded complaints.

Edward R. Martin, Jr., Esquire
Interim United States Attorney
Martin/Disciplinary Counsel
Disciplinary Docket No. 2025-D047
Page 3

     We have enclosed information regarding the District of Columbia Bar's Office of Regulation Counsel, which endeavors to assist attorneys with practice and personal-related issues. If you believe that you could benefit from the Bar's programs, they are available to you, separate and apart from this office's investigation.

                Very truly yours,

                *Hamilton P. Fox, III*

                Hamilton P. Fox, III
                Disciplinary Counsel

Enclosures:    Letter from Edward R. Martin, Jr. dated February 17, 2025
               Letter from Hon. Phillip J. Argento, dated March 10, 2025
               D.C. Bar Regulation Counsel Information

HPF:act

**Exhibit 7**



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20530

March 31, 2025

Hon. Anna Blackburne Rigsby
Chief Judge, DC Court of Appeals
Via Email: ▓▓▓▓▓▓▓▓▓▓▓▓▓
Hon. Stephen H. Glickman ▓▓▓▓▓▓▓▓▓▓
Hon. Vanessa Ruiz ▓▓▓▓▓▓▓▓
Hon. John M. Steadman ▓▓▓▓▓▓▓
Hon. Phyllis D. Thompson ▓▓▓▓▓▓▓▓▓▓
Hon. Eric T. Washington ▓▓▓▓▓▓▓▓▓

Dear Judges of the Court of Appeals:

I'm writing to you because of a crisis of Disciplinary Counsel Hamilton P. Fox III that is threatening to consume the court. Mr. Fox has stated that he is reporting to you as the Court of Appeals, and therefore I write to you.

Last week in an email from one of his staff, Mr. Fox sent some sort of "complaint" to me and asked me to respond. I will not be responding for three reasons.

First, I have a formal Complaint pending with you against Mr. Fox because of his uneven conduct. I await adjudication of it.

Second, the very topic of my initial letter to Mr. Fox relates to the fact that he has previously stated he would not open complaints against members of the bar when the complainant is someone without personal knowledge of the conduct. In my quick read of the recent document Mr. Fox sent, it appears the California resident has filed this "complaint" and his only knowledge of the situation is from the media or from Mr. Fox or Georgetown. This is unacceptable.

Third, the matter at the heart of the complaint appears to be related to Georgetown University and its Law Center. This is an ongoing matter in my office, and, in fact, Georgetown has obtained outside counsel who requested a meeting with me about the concerns expressed. We should respect confidentiality.

At this point, your Honors, the Court of Appeals is set to be consumed by Mr. Fox's uneven behavior. I am hereby requesting a face-to-face meeting with all of you to discuss this matter and find a way forward.

I am providing a courtesy copy of this letter to White House Counsel David Warrington for informational purposes because of the importance of getting this issue addressed.

I look forward to our meeting very soon.

Edward R. Martin, Jr.
United States Attorney for the District of Columbia


CC: Dave Warrington, White House Counsel

**Exhibit 8**



U.S. Department of Justice

Edward R. Martin, Jr.
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C. 20530*

February 17, 2025

Mr. William M. Treanor
Dean, Georgetown Law
600 New Jersey Avenue, NW  Suite 508
Washington, DC 20001

Dear Sir,

As United States Attorney for the District of Columbia, I receive requests for information and clarification. I take these requests seriously and act on them with letters like this one you are receiving.

It has come to my attention reliably that Georgetown Law School continues to teach and promote DEI. This is unacceptable.  I have begun an inquiry into this and would welcome your response to the following questions:

First, have you eliminated all DEI from your school and its curriculum?

Second, if DEI is found in your courses or teaching in anyway, will you move swiftly to remove it?

At this time, you should know that no applicant for our fellows program, our summer internship, or employment in our office who is a student or affiliated with a law school or university that continues to teach and utilize DEI will be considered.

I look forward to your cooperation with my letter of inquiry after request. Thank you in advance for your assistance. Please respond by Monday, February 24, 2025. Should you have further questions regarding this matter, please do not hesitate to call my office or schedule a time to meet in person.

All the best.

Sincerely,

Edward R. Martin, Jr.

United States Attorney for the District of Columbia

**Exhibit 9**



## GEORGETOWN LAW

**William M. Treanor**
Dean and Executive Vice President
Paul Regis Dean Leadership Chair

March 6, 2025

Edward R. Martin, Jr.
Interim United States Attorney
District of Columbia
Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20001

Dear Interim United States Attorney Martin:

      I write in response to your letter dated February 17, 2025, which you sent to me via email on March 3, 2025.

      As a Catholic and Jesuit institution, Georgetown University was founded on the principle that serious and sustained discourse among people of different faiths, cultures, and beliefs promotes intellectual, ethical, and spiritual understanding. For us at Georgetown, this principle is a moral and educational imperative. It is a principle that defines our mission as a Catholic and Jesuit institution. Georgetown University also prohibits discrimination and harassment in its programs and activities and takes seriously its obligations to comply with all federal and local laws.

      Your letter challenges Georgetown's ability to define our mission as an educational institution. It inquires about Georgetown Law's curriculum and classroom teaching, asks whether diversity, equity, and inclusion is part of the curriculum, and asserts that your office will not hire individuals from schools where you find the curriculum "unacceptable." The First Amendment, however, guarantees that the government cannot direct what Georgetown and its faculty teach and how to teach it. The Supreme Court has continually affirmed that among the freedoms central to a university's First Amendment rights are its abilities to determine, on academic grounds, who may teach, what to teach, and how to teach it.

7

This is a bedrock principle of constitutional law – recognized not only by the courts, but by the administration in which you serve. The Department of Education confirmed last week that it cannot restrict First Amendment rights and that it is statutorily prohibited from "exercising control over the content of school curricula."

Your letter informs me that your office will deny our students and graduates government employment opportunities until you, as Interim United States Attorney for the District of Columbia, approve of our curriculum. Given the First Amendment's protection of a university's freedom to determine its own curriculum and how to deliver it, the constitutional violation behind this threat is clear, as is the attack on the University's mission as a Jesuit and Catholic institution.

Georgetown Law has one of the preeminent faculties in the country, fostering groundbreaking scholarship, educating students in a wide variety of perspectives, and thriving on the robust exchange of ideas. Georgetown Law faculty have educated world leaders, members of Congress, and Justice Department officials, from diverse backgrounds and perspectives. We pride ourselves on providing an excellent graduate and professional education, built upon the Catholic and Jesuit tradition. Georgetown-educated attorneys have, for decades, served this country capably and selflessly in offices such as yours, and we have confidence that tradition will continue. We look forward to your confirming that any Georgetown-affiliated candidates for employment with your office will receive full and fair consideration.

Sincerely,

William M. Treanor
Dean and Executive Vice President
Paul Regis Dean Leadership Chair

**Exhibit 10**

| | |
|---|---|
| **From:** | Phillip J. Argento |
| **To:** | ODC Info |
| **Subject:** | [EXT]Complaint for Unprofessional Conduct by Interim Attorney Edward R. Martin |
| **Date:** | Monday, March 10, 2025 8:20:23 PM |
| **Attachments:** | 2025-03-10-pjalettertoDCBarReIUSAttyMartin.docx |

Dear Office of Disciplinary Counsel:

Attached is my letter of complaint addressed to Hamilton P. Fox III concerning unprofessional conduct by Interim United States Attorney, Edward R. Martin.

Phillip J. Argento

PHILLIP J. ARGENTO

---

Judge (Retired 2005), Los Angeles Superior Court



March 10, 2025

Hamilton P. Fox III
Disciplinary Counsel
Office of Disciplinary Counsel
District of Columbia Court of Appeals
515 5th Street, N.W.
Building A, Suite 117
Washington, D.C. 20001

Re:  Request to investigate Edward Robert Martin, Jr. for professional misconduct

Dear Mr. Hamilton:

As a 1975 graduate of Georgetown University Law Center, I write this unsolicited request to your office to investigate what appears to be professional misconduct by Edward Robert Martin, Jr., the Interim U.S. Attorney for the District of Columbia. My request arises from his February 17, 2025, letter to Mr. William M. Treanor, Dean, Georgetown Law, which states:

"As United States Attorney for the District of Columbia, I receive requests for information and clarification. I take these requests seriously and act on them with letters like this one you are receiving.

"It has come to my attention reliably that Georgetown Law School continues to teach and promote DEI. This is unacceptable. I have begun an inquiry into this and would welcome your response to the following questions:

"First, have you eliminated all DEI from your school and its curriculum?

"Second, if DEI is found in your courses or teaching in any way, will you move swiftly to remove it?

"At this time, you should know that no applicant for our fellows program, our summer internship, or employment in our office who is a student or affiliated with a law school or university that continues to teach and utilize DEI will be considered.

"I look forward to your cooperation with my letter of inquiry after request. Thank you in advance for your assistance. Please respond by February 24, 2025. Should you have any further questions

1

regarding this matter, please do not hesitate to call my office or schedule a time to meet in person.

"All the best.

"Sincerely,
[signature]
"Edward R. Martin, Jr.

"United States Attorney for the District of Columbia"[1]

Dean Treanor's reply letter follows my comments below concerning Mr. Martin's unprofessional conduct.

**Acts Outside Scope of His Authority, Unethical Attack on Religious Freedom as Incompetence.** Rule 1.1(a) reads: "A lawyer shall provide competent representation to a client." As Interim U.S. Attorney, Mr. Martin has one client, the United States of America. As Interim, Mr. Martin is "[c]harged with ensuring 'the laws be faithfully executed,'"as do "the 93 United States Attorneys [who]work to enforce federal laws throughout the country." The United States Attorney is the chief federal law enforcement officer in their district and is also involved in civil litigation where the United States is a party."[2]

Mr. Martin's letter merely declares that DEI is "unacceptable." He states no legal basis for "unacceptability," no reference to law that he is faithfully executing, or enforcing or defending within the subject matter jurisdiction of the United States Attorney's Office. The letter is incompetent on its face, saying nothing about his client's lawful interest being violated under a civil or criminal law.

Although President Trump's Executive Order 14151 reflects his own hostile view of DEI programs of the federal government, the President is not his client: neither he nor the President have any authority over private universities in this context. Dean Treanor accurately characterizes Mr. Martin's threat: "Given the First Amendment's protection of a university's freedom to determine its own curriculum and how to deliver it, the constitutional violation behind this threat is clear, as is the attack on the University's mission as a Jesuit and Catholic Institution.

As a person who teaches in the Order of Christian Initiation of Adults ministry at my church; I view Mr. Martin's letter is an attack on religious freedom. The *Catechism of the Catholic Church* (CCC) teaches: "Every form of social or cultural discrimination in fundamental personal rights

---

[1] Edward R. Martin, Jr., February 17, 2025, letter to William R. Treanor, Dean, Georgetown Law, https://www.scribd.com/document/835267202/Georegetown-School-of-Law-Dean-Feb-17th-2025#fullscreen&from_embed [03/07/2025]

[2] Department of Justice website, Offices of the United States Attorney, "About the U.S. Attorney's Offices, https://www.justice.gov/usao [03/07/2025].

2

on the grounds of sex, race, color, social conditions, language, or religion must be curbed and eradicated as incompatible with God's design."[3]

DEI is intended to remedy historic discrimination. It is not a perfect remedy; it can be misguided or abused, but again Mr. Martin fails to assert any good faith basis in law for his threat. Given Mr. Martin's education, he is no doubt familiar with the Latin phrase, "Agnus Dei," –lamb of God --which refers to Jesus the Christ.[4] He knows Matthew 25: 31-46 calls upon Catholic institutions to see Jesus Christ in those discriminated against—the poor, the marginalized, those historically oppressed by discrimination on the basis of race, ethnicity, sex, and other immoral grounds.[5] DEI at its best addresses such discrimination.

Mr. Martin's threat to not consider Georgetown law students and graduates because of Georgetown's DEI policies is wrong in many ways. To reject those students and graduates on that basis cannot be in the best interest of his client, the United States, which has a history of employing Georgetown graduates and students because of their demonstrated competence. Mr. Martin's threat is, in effect discrimination against those who attend any faith-based university with faith-based DEI. In Mr. Martin's political ideology, they are "tainted" by the DEI. But DEI is Catholic faith manifested in policy and action at Georgetown Law. The Interim U.S. Attorney should not abuse his office and disgrace the United States Department of Justice to engage in discrimination against faith-based institutions to serve his political ideology.

**Unmeritorious Claim.** Mr. Martin has made an unmeritorious claim and contention under Rule 3.1. "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law." The word "proceeding" is not defined under Rule 1 defining terms.

However, clearly, Mr. Martin has brought an unmeritorious claim that DEI at Georgetown is "unacceptable." It is, in effect, similar to a demand letter made on untenable grounds—indeed on no stated law whatsoever. Yet he would begin an "inquiry" based on unacceptability. Interestingly, nothing indicates that any applicant for the announced position as Assistant U.S. Attorney (Civil Division)[6] updated on February 25, requires as a qualification graduating from a

---

[3] *Catechism of the Catholic Church,* ¶ 1935, https://www.vatican.va/archive/ENG0015/__P6P.HTM [03/07/2025].

[4] Merriam-Webster Dictionary, "Angus Dei noun: 1: a liturgical prayer addressed to Christ as Savior 2: an image of a lamb often with a halo and a banner and cross used as a symbol of Christ." https://www.merriam-webster.com/dictionary/Agnus%20Dei [03/07/2025].

[5] United States Conference of Catholic Bishops, *Sharing Catholic Social Teaching: Challenges and Directions,*" (2007) ["Recognizing the importance of this broader goal of Catholic education and formation, we call for a renewed commitment to integrate Catholic social teaching into the mainstream of all Catholic educational institutions and programs.], https://www.usccb.org/resources/sharing-catholic-social-teaching-challenges-and-directions [03/07/2025]

[6] Job ID 25-DC-12702340-AUSA, "Assistant U.S. Attorney (Civil Division)" [Updated February 25, 2025; Application Deadline: Wednesday, March 12, 2025.], https://www.justice.gov/legal-careers/job/assistant-us-attorney-civil-division-1 [03/08/2025].

3

law school without a DEI program. The lack of such content suggests no such vetted, written, formal policy regarding such a qualification even existed in his office as of February 17, 2025.

Ethics Opinion 339[7] provides an interesting historical reference concerning Mr. Martin's unmeritorious claim. In regard to a demand letter, that opinion concluded that it was not unethical in the context of debt collection to merely cite or refer to a criminal statute and not unethical to include an additional reference to a criminal statute if payment of the debt is by check drawn on insufficient funds. Again, Mr. Martin failed to refer to any law or formal policy or rationale to support his claim of unacceptability.

Opinion's 339's refers to the District of Columbia Bar's Jordan Committee when it proposed Rule 8.4's prohibition making it misconduct to "seek or threaten to seek criminal charges … solely to obtain an advantage in a civil matter" and described such misconduct as "tantamount to common law blackmail." I do not think Mr. Martin committed blackmail.

However, the District of Columbia Code elucidates the nature of his political conduct. Section 22-3252 (a)(2): "(a) A person commits the offense of blackmail when that person with intent …to cause another to do or refrain from doing any act, threatens to: (2) "publicize an asserted fact, whether true or false, tending to subject another person to hatred, contempt, ridicule, embarrassment, or other injury to reputation."

Mr. Martin clearly intends  to cause Georgetown to eliminate its DEI, and his letter has been publicized[8] to assert that DEI is unacceptable. Because of his political background, in all probability he knew that its publicity would draw praise from others like himself who are hostile to DEI, perhaps praise from the President, and would excite vitriolic persons like those calling Justice Amy Coney Barrett "evil," "a closet Democrat, and "DEI hire"[9] because she joined the majority in rejecting the legality of the Trump Administration's freeze on foreign aid, according to the Washington Post.  To such persons DEI merits "hatred, contempt, and ridicule" which seems to be Mr. Martin's view as well. This was a threat to injure Georgetown's reputation for its students obtaining prestigious positions with the U.S. Attorney's Office.

However, as stated, I do not believe that Mr. Martin committed the crime blackmail within the meaning of section 22-3252 for a number of reasons. One is that "This is unacceptable" is an opinion, not a fact.

---

[7] Ethics Opinion 339, "Threat of Criminal Referral In Civil Debt Collection Matter," (2007), https://www.dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-339 [03/07/2025].

[8] Spencer S. Hsu &Dan Rosenweig-Ziff, "D.C. U.S. attorney tells Georgetown he won' hire from any law school with 'DEI,'" *Jewish World Review* (03/06/2025) ["Martin's letter was first reported and posted by the Post Millennial, a right-wing website, and confirmed to The Washington Post by two people familiar with the matter, who spoke on the condition of anonymity to discuss private correspondence."], http://jewishworldreview.com/0325/DEI_no_hire.php [03/08/2025].

[9] Ann E. Marimow, "Justice Amy Coney Barrett ignites anger on the right after ruling against Trump," The Washington Post (03/06/2025), https://www.washingtonpost.com/politics/2025/03/06/amy-coney-barrett-trump-criticism-supreme-court/ [03/08/2025.]

4

As an opinion it is susceptible to an inference that he could not in good faith state law or assert facts relating to DEI lack of merits under any existing federal criminal or civil statute or other law that applies to Georgetown with respect to which enforcement falls within the U.S. Attorney's Office. A similar inference arises from his dubious implied legal authority to not hire graduates of law schools based on their DEI policies.

While not legally blackmail, Mr. Martin's letter politically shares its dynamic: public threat by the public prosecutor to not employ Georgetown graduates and students for the political purpose of eliminating DEI.  This is incompetent practice of law with professional political skill.

**Misrepresentation.** This is minor, but symbolic of too casual a concern for facts and the dignity of the office he holds as Interim U.S. Attorney. In Mr. Martin's letter to Dean Treanor, he misrepresented himself as "the U.S. Attorney."  As of the date of his February 17 letter, Mr. Martin was not confirmed by the U.S. Senate. He also misrepresents himself as "the U.S. Attorney" on the office's website in large print, "Meet the U.S. Attorney," though accurately in the smaller print below as "Interim U.S. Attorney for the District of Columbia."[10] Given Mr. Martin's education, one must ask is this not more than "merely negligent misrepresentation."[11]

Under Rule of Professional Conduct 4.1, "Truthfulness in Statements to Others," "In the course of representing a client, a lawyer shall not knowingly: (a) Make a false statement of material fact or law to a third person." Mr. Martin's only client is the United States of America; Dean Treanor is the third person. Mr. Martin's misrepresentation is arguably a material fact. Were he confirmed the viability of the threat would be materially strengthened, lengthened, and thus protected because, once confirmed, a U.S. Attorney can be removed legally against his will only by the President or by Congress through impeachment proceedings.

**Conclusion.** In my opinion, Mr. Martin should be investigated by the District of Columbia Bar on the grounds and facts stated herein.

In my view, Mr. Martin is a highly intelligent man with what appears to be an excellent education. He has much experience as a political operative; he had no prior experience as a federal prosecutor prior to his present position.[12] While his lack of federal prosecutorial experience may mitigate discipline, if imposed, his unethical conduct at minimum is conduct not becoming an Interim U.S. Attorney. As stated by the American Bar Association, "Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers."[13]

---

[10] Staff Profile, Meet the U.S. Attorney, Edward R. Martin, Jr., https://www.justice.gov/usao-dc/staff-profile/meet-us-attorney [03/07/2025].

[11] Rule 1.0 Terminology, Comment [1] concerning definition of "Fraud" or "Fraudulent," https://www.dcbar.org/For-Lawyers/Legal-Ethics/Rules-of-Professional-Conduct/Client-Lawyer-Relationship/Terminology [03/10/2025].

[12] Wikipedia, "Ed Martin (Missouri politician)," (03/08/2025, https://en.wikipedia.org/wiki/Ed_Martin_(Missouri_politician) [03/08/2025]

[13] American Bar Association, Model Rules of Professional Conduct, Rule 8.4 Misconduct Comment [7], https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional

Sincerely,

Phillip J. Argento

_conduct/rule_8_4_misconduct/comment_on_rule_8_4/#:~:text=A%20lawyer's%20abuse%20of%20public%20office%20can,manager%20of%20a%20corporation%20or% [03/10/2025].

**Exhibit 11**

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

_____
                                 :

**In the Matter of**                    :

                                    :

**EDWARD R. MARTIN**        :      **Disciplinary Docket No.: 2025-D047**

                                    :

     **Respondent**              :

                                    :

**Member of the Bar of the District**   :
   **of Columbia Court of Appeals**     :
**Bar Number:  481866**              :
**Date of Admission:  June 10, 2003**   :
_____:

**<u>PETITION INSTITUTING FORMAL DISCIPLINARY PROCEEDINGS</u>**

A.      This Petition (including the attached Specification of Charges which is made part of this Petition) notifies Respondent that disciplinary proceedings are hereby instituted pursuant to Rule XI, § 8(c), of the District of Columbia Court of Appeals' Rules Governing the Bar (D.C. Bar R.).

B.      Respondent is an attorney admitted to practice before the District of Columbia Court of Appeals on the date stated in the caption of the Specification of Charges.

C.      A lawyer member of a Hearing Committee assigned by the Board on Professional Responsibility (Board) pursuant to D.C. Bar R. XI, § 4(e)(5), has approved the institution of these disciplinary proceedings.

**D.**    *__Procedures__*

(1)    **Referral to Hearing Committee** -- When the Board receives the Petition Instituting Formal Disciplinary Proceedings, the Board shall refer it to a Hearing Committee.

(2)    **Filing Answer** -- Respondent must respond to the Specification of Charges by filing an answer with the Board and by serving a copy on the Office of Disciplinary Counsel within 20 days of the date of service of this Petition, unless the time is extended by the Chair of the Hearing Committee.  Permission to file an answer after the 20-day period may be granted by the Chair of the Hearing Committee if the failure to file an answer was attributable to mistake, inadvertence, surprise, or excusable neglect.  If a limiting date occurs on a Saturday, Sunday, or official holiday in the District of Columbia, the time for submission will be extended to the next business day.  Any motion to extend the time to file an answer, and/or any other motion filed with the Board or Hearing Committee Chair, must be served on the Office of Disciplinary Counsel at the address shown on the last page of this petition.

(3)    **Content of Answer** -- The answer may be a denial, a statement in exculpation, or a statement in mitigation of the alleged misconduct.  Any charges not answered by Respondent may be deemed established as provided in Board Rule 7.7.

2

(4)    **Mitigation** -- Respondent has the right to present evidence in mitigation to the Hearing Committee regardless of whether the substantive allegations of the Specification of Charges are admitted or denied.

(5)    **Process** -- Respondent is entitled to fifteen days' notice of the time and place of hearing, to be represented by counsel, to cross-examine witnesses, and to present evidence.

E.    In addition to the procedures contained in D.C. Bar R. XI, the Board has promulgated Board Rules relating to procedures and the admission of evidence which are applicable to these procedures.  A copy of these rules is being provided to Respondent with a copy of this Petition.

**WHEREFORE**, the Office of Disciplinary Counsel requests that the Board consider whether the conduct of Respondent violated the District of Columbia Rules of Professional Conduct, and, if so, that it impose/recommend appropriate discipline.

*Hamilton P. Fox, III*

Hamilton P. Fox, III
Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
Telephone: (202) 638-1501
Fax: (202) 638-0862

3

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

_____

In the Matter of                                    :
                                                    :
EDWARD R. MARTIN, JR.          : Disciplinary Docket No.: 2025-D047
                                                    :
    Respondent                              :
                                                    :
A Member of the Bar of the            :
District of Columbia Court of Appeals.  :
Bar Number:  481866                   :
Date of Admission:  June 9, 2003    :
_____:

## SPECIFICATION OF CHARGES

The disciplinary proceedings instituted by this petition are based upon conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by D.C. Bar Rule X and D.C. Bar Rule XI, § 2(b).

Jurisdiction for this disciplinary proceeding is prescribed by D.C. Bar Rule XI.  Pursuant to D.C. Bar Rule XI, § 1(a), jurisdiction is found because:

1.    Respondent Edward R. Martin, Jr. is a member of the Bar of the District of Columbia Court of Appeals, having been admitted on June 9, 2003, and assigned Bar Number 481866.

The conduct and standards that Respondent has violated are as follows:

## COUNT I:

2.    Following his January 20, 2025 Inauguration, President Trump

appointed Mr. Martin to serve as interim United States Attorney for the District of Columbia.

3.    On February 17, 2025, in his capacity as United States Attorney, Mr. Martin wrote a letter to the Dean of Georgetown University Law Center ("Georgetown Law").

4.    Georgetown Law is affiliated with Georgetown University, a private Catholic and Jesuit institution.

5.    In his February 17 letter, Mr. Martin stated that a whistleblower had informed him that Georgetown Law was teaching and promoting "DEI."  Mr. Martin did not define "DEI" or specify what ideas Georgetown Law was teaching or promoting that the government deemed unacceptable.

6.    Mr. Martin inquired whether Georgetown Law had eliminated all DEI from its school and curriculum and, if DEI was found in the school's courses or curriculum, would Georgetown Law move swiftly to remove it.

7.    Without further explanation, and before even receiving a response, Mr. Martin announced in his February 17 letter that he was imposing sanctions on Georgetown Law, its students, or anyone affiliated with the school:

> At this time, I have instructed our staff that no applicant for our prestigious fellows program, our summer internship, or employment in our office who is a student or affiliated with Georgetown law school will be considered until this is resolved.

8.    By letter dated March 6, 2025, Georgetown Law Dean William

2

M. Treanor responded to Mr. Martin's February 17 letter. Dean Treanor stated that the First Amendment to the Constitution of the United States guarantees that the government cannot direct what Georgetown and its faculty teach or how to teach it. He further wrote that denying Georgetown Law students and graduates government employment opportunities until Mr. Martin approved the school's curriculum was a constitutional violation and "an attack on the University's mission as a Jesuit and Catholic institution."

9. Mr. Martin responded to Dean Treanor's letter on March 17, 2025, repeating his questions about whether DEI had been or would soon be eliminated from the school and curriculum. He stated that Georgetown University operates as a "501(c)(3) nonprofit and received nearly $1 billion of federal tax dollars in recent years." He further wrote, "Until you answer my questions in full, as my initial letter stated, no Georgetown Law student will be considered for our fellows program, our summer internships, or employment in our office."

10. Also on March 17, 2025, Mr. Martin wrote the interim President and the Chairman of the Board of Directors of Georgetown University, complaining that Dean Treanor had not responded to the questions he had asked in the two letters Mr. Martin had sent him. He stated, "Answers to these questions appear to bear directly on Georgetown University's status as a 501(c) nonprofit and its receipt of nearly $1 billion of federal tax money in recent years."

11.    Mr. Martin knew or should have known that, as a government official, his conduct violated the First and Fifth Amendments to the Constitution of the United States in that:

a.  He demanded that Georgetown Law change what it teaches students and how it teaches them;

b. He stated that a particular viewpoint, undefined "DEI," is unacceptable and threatened to and did take adverse action against Georgetown Law to penalize it for teaching and promoting that viewpoint;

c. Acting in his official capacity and speaking on behalf of the government, he used coercion to punish or suppress a disfavored viewpoint, the teaching and promotion of "DEI";

d. He demanded that Georgetown Law relinquish its free speech and religious rights in order to continue to obtain a benefit, employment opportunities for its students;

e.    His demand did not provide Georgetown Law fair notice of what is allegedly prohibited because he did not define "DEI," cited no authority for his demand, and did not describe what actions, and what timetable, might satisfy his demand; and;

f.    He failed to follow any procedure that would have given Georgetown Law an opportunity to defend itself before he imposed a penalty on the

4

school.

12.     Mr. Martin's conduct as set forth in Count I violated his oath of office as an attorney admitted to the Bar of the District of Columbia Court of Appeals, in which he swore to "support the Constitution of the United States of America," and therefore is grounds for discipline pursuant to Rule XI, § 2(b).

**COUNT II:**

13.     By letter dated March 10, 2025, retired Judge Phillip Argento wrote Disciplinary Counsel complaining about Mr. Martin's February 17, 2025 letter to Dean Treanor.

14.     On March 28, 2025, Disciplinary Counsel docketed Judge Argento's complaint for further investigation and forwarded it to Mr. Martin for a response by April 14, 2025.

15.     Instead of responding to Disciplinary Counsel's letter, on March 31, 2025, Mr. Martin sent, *ex parte*, a letter to the Chief Judge and the Senior Judges of the District of Columbia Court of Appeals.  In that letter, he stated that he would not be responding to Disciplinary Counsel's inquiry, complained about Disciplinary Counsel's "uneven behavior," and requested a "face-to-face meeting with all of you to discuss this matter and find a way forward."   He copied the White House Counsel "for informational purposes because of the importance of getting this issue addressed."

5

16.     On April 8, 2025, the Chief Judge responded to Mr. Martin's March 31 letter. She informed him that the court could not permissively meet with him *ex parte* and that any concerns should be raised through the regular procedures established by the court to govern the disciplinary process.

17.     Mr. Martin did not copy Disciplinary Counsel on this correspondence with the Chief Judge, so on April 15, 2025, Disciplinary Counsel sent a follow-up letter to Mr. Martin, attaching the March 28 communication, and sought a response by April 25.

18.     Mr. Martin responded with an email that same day, in which he explained that he had communicated with the Chief Judge, but that he and she had not yet met. He copied the Chief Judge on this email, even though she had told him in her April 8 letter that he should follow the regular procedures and that it would be inappropriate to meet with him *ex parte* about this matter.

19.     On the same day, the Chief Judge responded to Mr. Martin's April 15 email, copying Disciplinary Counsel. She repeated that neither she nor other members of the court could meet with him *ex parte* and that he should follow the written procedures, which "do not include referral of correspondence from the Office of Disciplinary Counsel directly to a judge of the Court of Appeals."

20.     On April 21, 2025, Disciplinary Counsel requested from Mr. Martin a copy of the letter he had sent to the Chief Judge and Senior Judges on March 31.

6

21.     Mr. Martin did not reply to the April 21 letter or to the second inquiry Disciplinary Counsel had sent him on April 15.   On April 28, 2025, Disciplinary Counsel filed a Motion to Compel Response to Written Inquires with the Board on Professional Responsibility.

22.     Mr. Martin sought an extension of time from the Board on May 2, 2025, to retain counsel before responding.

23.     On May 13, 2025, Mr. Martin sent another letter to the Chief Judge, copying Disciplinary Counsel, complaining about the manner in which the April 15 follow-up inquiry had been served on him.  He asked, "that you not only suspend Mr. Fox immediately to investigate his conduct, but also to dismiss the case against me because of his prejudicial conduct."

24.     The Chief Judge responded the next day, May 14, reiterating her statements in her April 8 letter and April 15 email that Mr. Martin should raise any concerns by following the court's procedures.

25.     Through counsel, on June 10, 2025, Mr. Martin finally responded to the inquiry initially sent to him on March 28, 2025,

26.     Mr. Martin's conduct as set forth in Count II violated the following District of Columbia Rules of Professional Conduct:

     a.     Rule 3.5(b), communicating *ex parte* with a judge during a proceeding unless authorized to do so by law or court order; and

7

b.  Rule 8.4(d), engaging in conduct that seriously interferes with the administration of justice.

Respectfully submitted,

/s/ *Hamilton P. Fox, III*
Hamilton P. Fox, III
Disciplinary Counsel

s/ Jerri U. Dunston
Jerri U. Dunston
Assistant Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America, that I verily believe the facts stated in the Specification of Charges to be true and correct. Executed on the 6th day of March 2026.

/s/ *Hamilton P. Fox, III*
Hamilton P. Fox, III
Disciplinary Counsel

8

**Exhibit 12**



RECEIVED

March 30, 2026 5:08 pm

Board on Professional
Responsibility

## DISTRICT OF COLUMBIA COURT OF APPEALS

## BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of

EDWARD R. MARTIN,

Respondent, A Member of the Bar of
the District of Columbia Court of
Appeals

Bar No. 481866

Date of Admission: June 10, 2003

Disciplinary Docket No.

2025-D047

## ANSWER

Comes now Edward R. Martin, Respondent in the above-entitled matter, and
for his answer to the Specification of Charges shows the following:

### FIRST DEFENSE—JURISDICTION IS ABSENT IN LIGHT OF THE TAKE CARE CLAUSE AND LACK OF COMPLAINT AGAINST RESPONDENT BY THE FORMER PRESIDENT.

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred
to in the Charges because the Respondent was acting at all relevant times pursuant
to the President's authority under the Take Care Clause, U.S. Const., art. II, § 3, to
enforce the constitution and laws of the United States. At no time has President
Trump complained about the challenged conduct of the Respondent or voluntarily
submitted a dispute of that nature to the D.C. Bar for investigation and
adjudication.

**SECOND DEFENSE—UNDER 28 U.S.C. § 541, 28 U.S.C. § 546, AND THE AUGUST 2, 1985 OLC OPINION THE DC BAR HAS NO JURISDICTION.**

The D.C. Bar lacks jurisdiction over the conduct referred to in the Charges under the Take Care Clause of Article II of the U.S. Constitution. *See also* 28 U.S.C. § 541 (U.S. Attorneys to be appointed by President with advice and consent of Senate); 28 U.S.C. § 546 (Acting U.S. Attorneys appointed by the Attorney General); U.S. Department of Justice, Office of Legal Counsel Opinion, *State Bar Disciplinary Rules as Applied to Federal Government Attorneys* (Aug. 2, 1985) ("Rules promulgated by state courts or bar associations that are inconsistent with the requirements or exigencies of federal service may violate the Supremacy Clause."), *available at* https://tinyurl.com/56bft7sb, *last visited* (Mar. 26, 2026) ("OLC Opinion").

**THIRD DEFENSE—THE DC BAR HAS NO JURISDICTION WHERE IT INVADES A SPHERE OF UNREVIEWABLE PRESIDENTIAL AUTHORITY.**

The D.C. Bar lacks jurisdiction over the conduct of Respondent referred to in the Charges under the Constitution of the United States because the attempt to assert jurisdiction over Respondent's conduct as alleged in the Charges intrudes on the President's exclusive and unreviewable authority over federal criminal and civil investigations occurring during his term of office, pursuant to the Take Care Clause and as such authority is delegated by the President consistent with the U.S.

2

Department of Justice power structure established in 28 U.S.C. § 506 and as elaborated in *Trump v. U.S.*, 603 U.S. 593 (2024).

### FOURTH DEFENSE—THE DC BAR HAS NO JURISDICTION OVER FEDERAL EXECUTIVE BRANCH DISCRETIONARY INVESTIGATIONS IN LIGHT OF THE SEPARATION OF POWERS AND THE SUPREMACY CLAUSE.

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because 28 U.S.C. § 530B(a) does not grant to regulatory, local bar entities any authority to regulate the conduct of investigations by U.S. Department of Justice lawyers in the course or conduct of preliminary non-compulsory investigative inquiries. Nor does the statute, by its terms, authorize the D.C. Bar to oversee or second guess the execution of internal DOJ and Executive Branch policies governing enforcement actions and investigations. If the statute were read to do so as to the D.C. Bar or D.C. Court of Appeals, it would violate the separation of powers because both the Bar and the D.C. Court of Appeals are creatures of Article I, as established by Congress, and Congress cannot penetrate into the investigative and prosecutorial functions of the Executive Branch to try to shape how those deliberations are conducted. Additionally, because Section 530B(a) refers to state laws and rules, even if D.C. could be considered a covered analogue of a State, application of Section 530B(a) to the President's exercise of prosecutorial discretion would result in a constitutional conflict, preempted as violative of the Supremacy Clause, U.S. Const., art. VI, cl. 2. States also lack the

3

constitutional power to intrude on the Executive Branch's deliberations. And the

District of Columbia, as a federal enclave, does not wield authority superior to that

of the President with respect to the exercise of prosecutorial discretion.

### FIFTH DEFENSE—NO RESPONDENT TESTIMONY CAN BE COMPELLED IN VIOLATION OF EXECUTIVE PRIVILEGE.

Respondent cannot be forced to testify or take actions in violation of

executive privilege.

### SIXTH DEFENSE— NO TESTIMONY VIOLATING LAW ENFORCEMENT PRIVILEGE CAN BE USED AGAINST RESPONDENT.

No evidence or testimony given in violation of the law enforcement

privilege can be used against Respondent.

### SEVENTH DEFENSE—NO RESPONDENT TESTIMONY CAN BE COMPELLED IN VIOLATION OF LAW ENFORCEMENT PRIVILEGE.

Respondent cannot be forced to testify or take actions in violation of law

enforcement privilege.

### EIGHTH DEFENSE—NO TESTIMONY VIOLATING ATTORNEY-CLIENT PRIVILEGE CAN BE COMPELLED OR USED AGAINST RESPONDENT.

No testimony or evidence can be compelled or presented against Respondent

in violation of attorney-client privilege.

4

**NINTH DEFENSE—TESTIMONY IN VIOLATION OF APPLICABLE PRIVILEGES WOULD VIOLATE DUE PROCESS.**

Receiving into evidence in this proceeding testimony against Respondent that was given in violation of any of executive privilege, law enforcement privilege, or attorney-client privilege would violate due process because Respondent, observing one or more of the applicable privileges, cannot counter the testimony given against him without violating one or more of the privileges, creating a procedural Catch-22 of which ODC and the D.C. Bar generally have now been put on notice.

**TENTH DEFENSE—TESTIMONY IN VIOLATION OF APPLICABLE PRIVILEGES WOULD VIOLATE THE CONFRONTATION CLAUSE.**

Receiving into evidence in this proceeding testimony against Respondent that violates any of executive privilege, law enforcement privilege, or attorney-client privilege would violate the Confrontation Clause (U.S. Const., amend. VI) because Respondent, observing one or more of the applicable privileges, cannot counter and thus confront the testimony given against him without violating one or more of the privileges, creating a second procedural Catch-22.

**ELEVENTH DEFENSE—D.C. BAR JURISDICTION VIOLATES *LOPER BRIGHT*.**

Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), 28 U.S.C. § 530B cannot be read to clearly delegate to the Department of Justice the power to confer on the District of Columbia authority to regulate lawyers serving

5

in the Department of Justice. *See,* also *West Virginia v. EPA*, 142 S. Ct. 2587 (2022); *Hickman v. Train*, 426 U.S. 167 (1976); OLC Opinion.

28 C.F.R. § 77.2(h), the Justice Department regulation adopted under 28 U.S.C. § 530B, purports to grant the District of Columbia some regulatory authority over lawyers serving in the Department of Justice, but that is an expansion of Section 530B not authorized by the text of the statute. To the extent the regulation purports to do so, it is invalid

### TWELFTH DEFENSE—THE D.C. COURT OF APPEALS AND ITS SUBORDINATE ENTITIES LACK SUPERVISORY JURISDICTION OVER THE CHARGED CONDUCT.

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because none of the conduct as alleged occurred in a setting over which a local Court of the District of Columbia has supervisory jurisdiction.

### THIRTEENTH DEFENSE—D.C. BAR JURISDICTION WOULD VIOLATE 28 U.S.C. § 530B'S LIMITED STATUTORY JURISDICTION.

The D.C. Bar lacks *statutory* jurisdiction over the conduct of the Respondent referred to in the Charges because, even if 28 U.S.C. § 530B granted disciplinary authority in circumstances like those here to the D.C. Bar, it only does so "to the same extent and in the same manner as other attorneys in that State," and the D.C. Bar has never attempted to charge, much less discipline, conduct as alleged in the Charges.

6

### FOURTEENTH DEFENSE—D.C. BAR JURISDICTION WOULD VIOLATE 28 C.F.R. § 77.2(j)(2)'S LIMITED REGULATORY JURISDICTION.

Even if there were valid Section 530B statutory jurisdiction here (which there is not), the D.C. Bar lacks *regulatory* jurisdiction over the conduct of the Respondent referred to in the Charges because 28 C.F.R. § 77.2(j)(2) denies jurisdiction to the D.C. Bar where it would otherwise exist if the D.C. Bar "would not *ordinarily* apply its rules of ethical conduct to particular conduct or activity by the attorney." This is so even assuming Section 77.2 is a valid enactment consistent with *Loper Bright*, which it is not, at least as applied here. The D.C. Bar not only does not ordinarily apply its rules of ethical conduct to the charged conduct of the Respondent, but it has also never done so.

### FIFTEENTH DEFENSE – RESPONDENT IS ENTITLED TO OFFICIAL IMMUNITY OR QUALIFIED IMMUNITY.

The conduct referred to in the Charges is not subject to discipline by the D.C. Bar under the doctrine of official immunity. This applies to prosecutorial immunity in addition to Executive immunity. *See, Imbler v. Pachtman 424 US 409 (1976). See also, e.g.*, *Nixon v. Fitzgerald,* 457 U.S. 731 (1982); *Banneker Ventures, L.L.C. v. Graham*, 798 F.3d 1119 (2015); *Clifton v. Cox*, 549 F.2d 722, 729-30 (9th Cir. 1977). In the alternative, he is entitled to qualified immunity. Further, these are threshold defenses and Respondent is entitled to have them adjudicated by a real judge in a forum which provides the type of due process

7

applicable to such matters. Respondent is also entitled to have these issues resolved on appeal if necessary, *before* any evidentiary trial of this case. The processes of the D.C. Bar are unlawful because they deny respondents who are federal attorneys these procedural and substantive defenses.

### SIXTEENTH DEFENSE—FAILURE TO STATE A RULES VIOLATION.

The Charges fail to state a violation of the Rules of Professional Conduct.

### SEVENTEENTH DEFENSE—LACK OF DUE PROCESS FAIR NOTICE.

Respondent lacks fair notice that the conduct alleged in the Charges constituted a violation of the D.C. Bar Rules. This is especially true with respect to the charge in Count I that Respondent violated his oath of office to uphold the Constitution.

### EIGHTEENTH DEFENSE—NO RULE OF PROFESSIONAL CONDUCT WAS VIOLATED AND ESPECIALLY NONE WAS VIOLATED WITH SCIENTER.

Respondent denies that he has violated any Rule of Professional Conduct as alleged in the Charges and the Charges do not aver (or sufficiently aver) the prerequisite elements of the conduct on which the Charges are constructed, including failure of any required scienter to act in a dishonest fashion for self-gain or to achieve an illicit objective for former President Trump.

8

### NINETEENTH DEFENSE—ODC'S PROSECUTION HERE IS POLITICAL IN NATURE.

The Charges should be dismissed because they are brought for political reasons selectively enforced rather than any concern for enforcement of the Rules of Professional Responsibility.

### TWENTIETH DEFENSE—WHETHER DEI POLICIES AT GEORGETOWN UNIVERSITY LAW CENTER ARE LAWFUL IS BEYOND THE JURISDICTION OF THE DISCIPLINARY PROCESS.

Due to the framing of the charges, adjudicating the legality of conducting an investigation into a potential crime and adjudicating the legality of Georgetown University Law Center's DEI policies and their application both as an institution and in the classroom is a logically necessary prerequisite to adjudicate the charges. The D.C. Bar disciplinary process has no jurisdiction or authority, nor is it a forum that provides the prerequisite due process protections to even commence any adjudication of the legality of conducting an investigation into a potential crime and adjudicating the legality of Georgetown University Law Center's DEI policies and their application both as an institution and in the classroom.

### TWENTY-FIRST DEFENSE—VIOLATION OF EQUAL PROTECTION.

The Office of Disciplinary Counsel wields its disciplinary authority here in a politically biased manner, prosecuting Republicans and especially supporters of President Trump with unequal application, excessive and improper zeal and upon frivolous grounds, while turning a blind eye to or only belatedly and grudgingly

9

stirring itself to administer reluctant slaps on the wrist for egregiously dishonest or felonious conduct by Democrats and opponents of President Trump such as Kevin Clinesmith, Mark Elias, members of the intelligence Community, Michael Sussman, and Hunter Biden, to name a few. This selective prosecution/disparate treatment of alleged violations of the Rules of Professional Conduct violates the equal protection component of the Fifth Amendment of the United States Constitution. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 214–18 (1995).

### TWENTY-SECOND DEFENSE—SELECTIVE PROSECUTION IN VIOLATION OF THE CONSTITUTION AND D.C. RULE OF PROFESSIONAL CONDUCT 3.8(a)

The Charges constitute a selective prosecution that violates equal protection, due process, and D.C. Rule of Professional Conduct 3.8(a). ODC has not brought charges against any of the attorneys involved in flagrant violations of constitutional rights such occurred in the knowingly fraudulent and dishonest Russia Hoax investigation, the knowingly dishonest and fraudulent prosecution of Michael Flynn, and the massive and systematic government censorship campaign at issue in *Missouri v. Biden*. U.S.D.C. for the Western District of Louisiana, Case No. 22-cv-1213, which was resolved by consent decree filed March 25, 2026. See https://nclalegal.org/filing/consent-decree/ (last visited Mar. 27, 2026).

10

**TWENTY-THIRD DEFENSE—ODC MAY NOT VIOLATE THE CONFIDENTIALITY OF THE INVESTIGATIVE STAGE OF THE DISCIPLINARY PROCESS.**

ODC has conducted itself in violation of its own rules, including violating the confidentiality of the investigative stage, D.C. Bar Rule XI, Section 17; by mailing notice of its investigation to the general public mailbox of the U.S. Attorney's Office for the District of Columbia.

**TWENTY-FOURTH DEFENSE—ODC'S FILING OF CHARGES OCCURRED AT LEAST IN PART TO RETALIATE AGAINST RESPONDENT FOR COMPLAINING ABOUT AND INVESTIGATING DISCIPLINARY COUNSEL'S WEAPONIZATION OF THE BAR DISCIPLINARY PROCESS AGAINST MEMBERS OF THE TRUMP ADMINISTRATION, INCLUDING RESPONDENT.**

The filing of charges was in retaliation for Respondent complaining about and investigating Disciplinary Counsel's weaponization of his authority against lawyers who worked for or were supportive of President Trump, including against Respondent. Such penalization/retaliation is a violation of the Due Process Clause of the Fifth Amendment. Inquiries and investigation of this conduct were within the scope of Respondent's duties as Director of the Weaponization Task Force, and Disciplinary Counsel is prohibited from bringing pretextual investigations and charges to either protect himself from accountability or to retaliate against Respondent for performing the lawful functions of his office.

11

**TWENTY-FIFTH DEFENSE—ODC'S OPENING ITS INVESTIGATION BASED ON A COMPLAINT FILED BY SOMEONE WITH NO PERSONAL KNOWLEDGE REINFORCES THE LACK OF REGULATORY JURISDICTION UNDER SECTION 77.2 AND IS A GATEWAY TO POLITICAL WEAPONIZATION OF THE BAR DISCIPLINARY PROCESS.**

No client for the relevant legal advice, analysis, or investigative actions of Respondent has complained of his conduct. This matter arose from a complainant who had no personal knowledge of any relevant facts. Opening bar investigations based on complaints from random cranks on the other side of the country enshrines the obvious practice that has opened the door to politically motivated weaponization of the bar disciplinary process, the very subject matter of Respondent's complaints about and investigation of Disciplinary Counsel.

**TWENTY-SIXTH DEFENSE—THE CHARGES VIOLATE THE D.C. HUMAN RIGHTS ACT BECAUSE THEY DISCRIMINATE AGAINST RESPONDENT'S POLITICAL AFFILIATIONS AND BELIEFS.**

Respondent is being discriminated against in violation of D.C. Human Rights Act, § 2-1401.01, on account of his political affiliation and beliefs.

**TWENTY-SEVENTH DEFENSE – THE D.C. BAR DISCIPLINARY PROCESS UNCONSTITUTIONALLY DEPRIVES RESPONDENT OF HIS RIGHT TO JURY TRIAL AS EXISTED AT COMMON LAW.**

The Disciplinary Process of the D.C. Bar denies respondents any right to a jury trial. This is an unconstitutional infringement of the 6th and 7th Amendment rights to jury trial as existed for attorney discipline at common law. The D.C. Court of Appeals, its disciplinary adjuncts, and the ODC cannot decide that attorneys are

12

entitled to only some constitutional rights but not others when a constitutionally protected property right is involved.

### TWENTY-EIGHTH DEFENSE – THE D.C. BAR DISCIPLINARY PROCESS DEPRIVES RESPONDENT OF HIS RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

Count I of the Charges purports to assert jurisdiction to initiate litigation against Respondent based an alleged constitutional tort through the medium and forums of a bar discipline allegation of violation of the attorney's oath of office to uphold the constitution. This illegal end run around a federal employees' legal right to available procedures and defenses for such claims in *Bivens*-style civil litigation unconstitutionally deprives Respondent of his substantive and procedural defenses available to federal employees in constitutional tort litigation.

### TWENTY-NINTH DEFENSE – THE ODC LACKS STANDING TO ASSERT A CONSTITUTIONAL TORT CLAIM AGAINST RESPONDENT.

The ODC lacks standing to assert on behalf of any other person that Respondent violated their constitutional rights.

### THIRTIETH DEFENSE – NO ADVERSE EMPLOYMENT DECISION WAS MADE AGAINST ANY GEORGETOWN LAW STUDENT.

Contrary to the lurid speculations of the charges, no actual adverse employment decision has been made against any Georgetown Law student or graduate based on the school's DEI policies and practices.

13

### THIRTY-FIRST DEFENSE – PROSECUTORIAL IMMUNITY

Respondent is entitled to prosecutorial immunity from the charges asserted against him. Such immunity cannot be avoided through a bar proceeding where the charges in such a proceeding are adjudicated by non-lawyers, non-judges and under severely curtailed discovery and trial procedures, not cured by the "review" of the severely circumscribed record by a judicial body twice removed from adjudication.

### THIRTY-SECOND DEFENSE – GEORGETOWN LAW'S DEI POLICIES ARE UNLAWFUL.

Georgetown Law' DEI policies and practices are 1) illegal under Georgetown University's obligations pertaining to its administration of federal funds; 2) unconstitutional under *Students for Fair Admissions, Inc. V. President and Fellows of Harvard College*, 600 U.S. 181 (2023) and *Mahmoud v. Taylor*, 606 U.S. 522 (2025); 3) violate Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(d) (Title VI); 42 U.S.C. §§2000e–2000e-17 (Title VII); and the D.C. Human Rights Act, D.C. Code §§ 2-1401-2-1404. Therefore, Respondent was acting properly to investigate Georgetown Law's violations of these laws.

### THIRTY-THIRD DEFENSE - ODC LACKS JURISDICTION TO FILE CHARGES AGAINST RESPONDENT BASED ON RESPONDENT'S INTERPRETATION OF CATHOLIC RELIGIOUS DOCTRINE.

ODC lacks jurisdiction to file charges against Respondent based on Respondent's, ODC's, or Mr. Argento's interpretation of Catholic religious

14

doctrine. Charging Respondent based on any position Respondent might take regarding his interpretation of catholic religious doctrine is a violation of his First Amendment rights.

### THIRTY-FOURTH DEFENSE – RESPONDENT WAS LAWFULLY EXECUTING THE PRESIDENT'S EXECUTIVE ORDERS AND ENFORCEMENT PRIORITIES.

Respondent's conduct did not violate any rule of the D.C. Bar because it was the lawful and proper execution of the President's Executive Orders relating to DEI and Weaponization. *See* Executive Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, available at https://www.federalregister.gov/documents/2025/01/29/2025-01953/endingradical-and-wasteful-government-dei-programs-and-preferencing (last visited Mar. 28, 2026); Executive Order 14173, *Ending illegal discrimination and restoring merit-based opportunity*, https://www.federalregister.gov/documents/2025/01/31/2025-02097/ending-illegal-discrimination-and-restoring-merit-based-opportunity (last visited Mar. 28, 2026). Georgetown University is also a large federal contractor and is therefore governed by federal anti-discrimination laws in contracting and by the recently issued Executive Order, *Addressing DEI Discrimination by Federal Contractors*, https://www.whitehouse.gov/presidential-actions/2026/03/addressing-dei-discrimination-by-federal-contractors/ (last visited Mar. 28, 2026), Georgetown annually administers hundreds of millions of dollars in federal student aid funds,

including loans and grants. *See* Title IV Program Volume Reports, at

https://studentaid.gov/data-center/student/title-iv (providing data on student loans,

by school) (last visited Mar. 28, 2025). The administration and operations of

Georgetown's educational programs are therefore subject to both Title VI of the

Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972,

codified at 20 U.S.C.§§ 1681–1688. Georgetown also exceeds the investigatory

threshold established by Executive Order 14173, with investments of $3.6 Billion.

*See* Georgetown University, Consolidated Financial Statements, June 30, 2024 and

2023, https://georgetown.app.box.com/s/p4dykc6kw954km39vlx59z5ht1ddrlf3, p.

3 (last visited Mar. 28, 2026). Nor is there a classroom or curricular exemption for

violating the Constitution and laws of the United States. See *Bob Jones Univ. v.*

*United States*, 461 U.S. 574, 103 S. Ct. 201 (1983) (revocation of tax exemption

for a religious school for practicing racial discrimination); *Mahmoud, supra*;

*Henderson v. Springfield* R-12 Sch. Dist., 163 F.4th 478 (8th Cir. 2025) (teachers

had standing to assert First Amendment claims arising from compelled DEI

training materials); *Mais v. Albemarle Cnty. Sch. Bd.*, 657 F. Supp. 3d 813 (W.D.

Va. 2023) (Title VII: hostile environment created by DEI "anti-racism" training

program; case settled and dismissed). The DEI programs and policies of

Georgetown Law are therefore subject to compliance review, investigation and

enforcement by the U.S. Attorney for the District of Columbia.

### THIRTY-FIFTH DEFENSE – THERE IS NO BIVENS-TYPE CLAIM AGAINST FEDERAL PROSECUTORS FOR FIRST AMENDMENT VIOLATIONS.

The disguised constitutional tort against Respondent should be rejected because there is no *Bivens*-type cause of action available against a federal prosecutor for violation of First Amendment rights. *See Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 596 U.S. 482 (2022). *Egbert* specifically refused to extend *Bivens* to the First Amendment context as would be required for such a claim against a federal prosecutor. Nor can *Bivens* be extended to prosecutors in light of their immunity under *Imbler v. Pachtman*, 424 U. S. 409, 421 (1976). Any *Bivens*-like finding cannot be "back doored" via a bar proceeding which, absent a proper adjudication of actionable conduct, cannot substitute its own adjudication under unconstitutional procedures.

### THIRTY-SIXTH DEFENSE – THE D.C. BAR'S ADMINISTRATIVE PROCESSES VIOLATE THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

The disciplinary processes of the D.C. Bar violate the Appointments Clause of the U.S. Constitution by giving presumptive effect to the recommendation of the Board of Professional Responsibility and the Hearing Committees that staffed by an extra-constitutional hybrid of lawyers and lay volunteers who (a) are not properly appointed under the Appointments Clause; and who (b) have neither the statutory authority of special masters, nor the constitutional authority of juries.

17

### THIRTY-SEVENTH DEFENSE – THE D.C. BAR'S ADMINISTRATIVE PROCESSES VIOLATE THE OATHS CLAUSE OF THE CONSTITUTION.

The disciplinary processes of the D.C. Bar violate the Oaths Clause of the U.S. Constitution in that the members of the Hearing Committees and the Board of Professional Responsibility do not appear to swear oaths consistent with Article VI of the Constitution.

### THIRTY-EIGHTH DEFENSE – THE D.C. BAR'S DISCIPLINARY PROCESS VIOLATES THE PRIVATE NON-DELEGATION DOCTRINE.

The disciplinary processes of the D.C. Bar violate the private non-delegation doctrine in that it delegates federal governmental powers to private citizens who are not appointed in accordance with the Appointments Clause and who do not take oaths as required by the Oaths Clause who make factual findings and make legal rulings that are accorded presumptive deference upon review by the D.C. Court of Appeals. Because the separate branches hold each of their powers (legislative, executive, and judicial) exclusively, the Constitution "permits no delegation" of federal governmental power. *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 472 (2001). No one branch can authorize another entity outside of itself "to exercise power in a manner inconsistent with the Constitution." *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 68 (Thomas, J., concurring). This "nondelegation doctrine" prohibits the delegation of any governmental power—legislative, executive, or

18

judicial— outside of their constitutionally prescribed boundaries. *Whitman*, 531 U.S. at 472 (legislative); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496–97 (2010) (executive); *Stern v. Marshall*, 564 U.S. 462, 482-83 (2011) (judicial). The "private-nondelegation doctrine" also prohibits Congress or either of the other two branches from empowering private entities to wield any of the Federal government's constitutionally prescribed powers. *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 537 (1935).

### THIRTY-NINTH DEFENSE – MEMBERS OF THE HEARING COMMITTEES AND THE BOARD OF PROFESSIONAL RESPONSIBILITY ARE PERMITTED TO SERVE WITHOUT DISCLOSING CONFLICTS OF INTEREST OR BURDENED BY CONFLICTS OF INTEREST AND BIAS AGAINST RESPONDENTS.

The D.C. Bar disciplinary processes allow volunteer members to serve on Hearing Committees and on the Board of Professional Responsibility without any disclosure of their conflicts of interest or biases and without permitting respondents to conduct any voir dire to ferret out bias or conflicts of interest. Even worse, when biases or conflicts of interest are discovered, they are not disqualifying – to the contrary, members of Hearing Committees and the Board of Professional Responsibility are permitted to serve despite clear political bias or conflicts of interest, depriving respondents of their constitutional rights to a neutral and detached adjudication as required by the Due Process Clause

19

**FORTIETH DEFENSE - RESPONSE TO ENUMERATED PARAGRAPHS.**

The following responses correspond to the enumerated paragraphs of the Specification of Charges.

1.

Admitted, except that Respondent denies violating any rule of professional conductor rules of the D.C. Bar.

2.

Admitted.

3.

Admitted.

4.

Admitted.

5.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

6.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

20

7.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

8.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

9.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

10.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

11.

Denied.

12.

Denied.

13.

Respondent admits that Disciplinary Counsel furnished Respondent with a document purporting to be a letter from Phillip Argento as referred to in this paragraph. Otherwise, the allegations of this paragraph are denied.

21

14.

Respondent admits that Disciplinary Counsel opened an investigation of him on March 28, 2025, and that Disciplinary Counsel purports to have done so based on the alleged Argento complaint letter. Otherwise, the allegations of this paragraph are denied.

15.

The referenced letter of March 31, 2025 speaks for itself. Otherwise, the allegations of this paragraph are denied. Respondent further shows that Disciplinary Counsel's chronology purposely omits material facts that cast the matter in an entirely different and exculpatory light, which is evidence of Disciplinary Counsel's bad faith.

16.

The referenced letter of April 8, 2025 speaks for itself. Otherwise, the allegations of this paragraph are denied. Respondent denies that the referenced letter was an ex parte contact within the meaning of any rule of professional responsibility. Further, Respondent shows that the Chief Judge has pre-judged the issue of whether there was an ex parte contact and must therefore be recused from any consideration of the charge that Respondent violated any rule regarding ex parte contacts.

22

17.

Respondent admits that his letter of March 31, 2025 was not sent to Disciplinary Counsel and that Disciplinary Counsel sent the referenced letter of April 15, 2025 and that it asked for a response by April 25, 2025. Otherwise, the allegations of this paragraph are denied.

18.

Respondent's referenced email to Disciplinary Counsel speaks for itself. Otherwise, the allegations of this paragraph are denied. Respondent denies that the referenced email was an ex parte contact within the meaning of any rule of professional responsibility. Further, Respondent shows that the Chief Judge has pre-judged the issue of whether there was an ex parte contact and must therefore be recused from any consideration of the charge that Respondent violated any rule regarding ex parte contacts.

19.

The referenced email from the Chief Judge speaks for itself. Otherwise, the allegations of this paragraph are denied. Respondent denies that any of his communications was an ex parte contact within the meaning of any rule of professional responsibility. Further, Respondent shows that the Chief Judge has pre-judged the issue of whether there was an ex parte contact and must therefore be

23

recused from any consideration of the charge that Respondent violated any rule regarding ex parte contacts.

20.

The referenced letter speaks for itself. Otherwise, the allegations of this paragraph are denied.

21.

Respondent admits that Disciplinary Counsel filed a motion to compel responses to written inquiries on April 28, 2026.

22.

Respondent admits that he sought an extension of time to retain counsel.

23.

The referenced letter speaks for itself and is a legitimate complaint about the misconduct of Disciplinary Counsel. Otherwise, the allegations of this paragraph are denied.

24.

Respondent admits that the Chief Judge responded on the date indicated and shows that the response speaks for itself. Otherwise, the allegations of this paragraph are denied. Respondent denies that any of his communications was an ex parte contact within the meaning of any rule of professional responsibility.

24

25.

Respondent admits that through counsel he responded to Disciplinary

Counsel's written inquiries on June 10, 2026.

26.

Denied.

Respectfully submitted this 30 day of March, 2026.

/s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP
6 Concourse Parkway, Suite 2400
Atlanta, Georgia 30328
(404) 843-1956
hmacdougald@ccedlaw.com

/s/ Robert A. Destro
Robert A. Destro
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

/s/ Christopher A. Byrne, Esq.
Christopher A. Byrne, Esq.
DC Bar No. 928424
Byrne Law PLLC
1050-30th St Northwest
Washington, DC 20007
(202) 487-6800
cabesq@protonmail.com

25

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party

with a copy of this *Answer* by email addressed to:

Hamilton P. Fox
Jerri U. Dunston
D.C. Bar Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This this 30 day of March, 2026.


                                        */s/ Harry W. MacDougald*
                                        Harry W. MacDougald
                                        Georgia Bar No. 453076

Caldwell, Carlson, Elliott & DeLoach, LLP
6 Concourse Parkway, Suite 2400
Atlanta, Georgia 30328
(404) 843-1956
hmacdougald@ccedlaw.com

26

**Exhibit 13**



FILED

Apr 2 2026 11:21am

Board on Professional Responsibility

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY
HEARING COMMITTEE NUMBER TWELVE

In the Matter of:                          :
                                           :
    EDWARD R, MARTIN, JR.,                 :
                                           :   Board Docket No. 26-BD-013
Respondent.                                :   Disciplinary Docket No. 2025-D047
                                           :
A Member of the Bar of the                 :
District of Columbia Court of Appeals      :
(Bar Registration No. 481866)              :

## ORDER

PLEASE TAKE NOTICE THAT a pre-hearing conference will be held in the above-captioned matter at **10:00 a.m. on Monday, April 20, 2026,** via Zoom video conference, in accordance with Board Rule 7.24, and will be live-streamed on the Hearing Committees' YouTube channel. Disciplinary Counsel and Respondent and/or their counsel shall appear promptly at that time. The parties are directed to avoid scheduling conflicting matters and shall inform any court or administrative agency of this prior commitment to the disciplinary system.

During that hearing, and pursuant to D.C. Bar Rule XI section 8(h), the undersigned will discuss with the parties appropriate measures to narrow the issues in this matter, including a process for identifying material, disputed factual matters to be resolved at the evidentiary hearing and reasonable deadlines for briefing legal issues that may be helpful for the Committee.

Prior to the pre-hearing conference, the parties are directed to meet and confer with respect to scheduling the evidentiary hearing of this matter on one or more of the following dates: **June 1, 4, 5, 9, 10, 11, or 12.** If the dates listed here are not mutually available, the parties shall make reasonable efforts to agree on hearing dates reasonably close to the dates above other than June 2, 3, and 8, which are not available. When considering scheduling, the parties are reminded that subpoenas are available to compel the attendance of witnesses, and witness testimony may be

taken from a remote location pursuant to Board Rule 11.4.  The parties are further reminded to allow time for opening statements and closing arguments when estimating the time necessary for the hearing.

No later than **seven days** before the date set for the pre-hearing conference, Disciplinary Counsel shall file a statement setting forth the agreed hearing date(s), whether Respondent has elected that the hearing will be held over Zoom, and not in person (*see* Administrative Order 2023-1),[1] as well as the agreed deadlines for (a) exchanging proposed documentary exhibits, (b) exchanging and filing witness lists, (c) filing objections to proposed documentary evidence and witnesses, (d) filing stipulations, (e) filing any notices or motions to present testimony remotely pursuant to Board Rule 11.4, if applicable, and (f) filing any other pre-hearing filings.  These deadlines should comply with Board Rules 7.17, 7.18, and 11.4, absent good cause shown.

If the parties are unable to agree on hearing dates, Disciplinary Counsel's statement shall set forth its preferred hearing dates as well as Respondent's preferred hearing dates.

The Office of the Executive Attorney is directed to serve this order by email, and to circulate the link for the Zoom pre-hearing conference.

It is so Ordered.

HEARING COMMITTEE NUMBER TWELVE

By: *Jonathan Shaw*

Jonathan M. Shaw
Chair

cc:

Edward R. Martin, Jr., Esquire

---

[1] If Respondent has elected that the hearing be held by Zoom, and that election is set forth in Disciplinary Counsel's statement, Respondent is not required to file a separate statement electing a Zoom proceeding.

2

c/o Harry W. MacDougald, Esquire
Christopher A. Bryne, Esquire
Robert A. Destro, Esquire
hmacdougald@ccedlaw.com
cabesq@protonmail.com
robert.destro@protonmail.com

Jerri U. Dunston, Esquire
Assistant Disciplinary Counsel
dunstonj@dcodc.org

3