## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Edward R. Martin, Jr.,<br><br>A member of the Bar<br>   of the District of Columbia<br>   Court of Appeals<br><br>Bar No. 481866 | Case No. 1:26-mc-0042-CRC |

### DISCIPLINARY COUNSEL'S REPLY

As explained in Disciplinary Counsel's motion, the Court should remand this proceeding because it lacks jurisdiction to hear it. Federal courts are "courts of limited jurisdiction," which "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The right to remove a case to federal court is "purely statutory," in which the scope of removal "and the terms of its availability . . . are entirely dependent on acts of Congress." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3721 (Rev. 4th ed.).

The disciplinary proceeding against Edward Martin must be remanded because removal is not authorized under the removal statutes. The federal officer removal statute, 42 U.S.C. § 1442(a), authorizes district courts to hear certain "civil actions" and "criminal prosecutions" against federal officers, but disciplinary

1

matters are neither civil actions nor criminal prosecutions.[1] They are *sui generis* internal governance proceedings by which courts maintain the integrity of their own bar members. Accordingly, removal is not authorized simply because the matter involves the conduct of an attorney representing the federal government. Nor do disciplinary actions fit within the expanded definition of "civil action" and "criminal prosecution" in Section 1442(d)(1). That section permits removal to the extent that a judicial order, such as "for testimony or documents" is sought against a federal officer in his official capacity, in which case "only that proceeding may be removed." 28 U.S.C. § 1442(d)(1). The proceeding against Martin seeks to adjudicate whether he should be disciplined as a member of the D.C. Bar for violating the attorney's oath and the D.C. Rules of Professional Conduct; it does not seek a judicial order compelling his testimony as a federal officer in a state proceeding or to produce documents for the federal government.

Beyond the inapplicability of the removal statutes on their face, Congress decreed in the McDade Amendment that attorneys for the federal government are subject to state ethics rules "to the same extent and *in the same manner* as other attorneys in that State." 28 U.S.C. § 530B(a) (emphasis added). Attempting to adjudicate disciplinary charges against Martin in federal court would subject him to

---

[1] Martin appears to have abandoned any argument that the matter is removable under the other statutes cited in his notice of removal.

the rules in a *different* manner than other attorneys licensed to practice in District of Columbia by the D.C. Court of Appeals. Neither Martin's response to the remand motion nor the brief supporting him filed on behalf of the United States shows that this Court has jurisdiction to entertain Martin's disciplinary case.

### A.   The disciplinary proceeding is not a "civil action" or a "criminal prosecution" under Section 1442(a).

Neither Martin nor the United States argues directly that the disciplinary proceeding qualifies as either a "civil action" or a "criminal prosecution" as those terms are used in the removal statutes.[2] Instead, Martin argues that disciplinary matters are ("or should be") removable under the "weight of federal authority"— without discussing the text of the removal statutes—whereas the government argues that the proceeding "functions" as a civil action. *See* Martin Resp. 13-19; U.S. Br. 26-29. Neither argument is sound.

To begin, Martin's discussion of the "weight of federal authority" includes just one case in which removal of a disciplinary matter to federal court was permitted: *Kolibash v. Committee on Legal Ethics of W.V. Bar*, 872 F.2d 571 (4th

---

[2] The government spends most of its brief arguing that Martin met two requirements for federal officer removal which are not at issue here—whether he was acting under color of his office and alleged a plausible federal defense. *See* U.S. Br. 12-25. Disciplinary Counsel's motion to remand is not premised on whether Martin met those requirements; it is premised on the threshold question of whether the disciplinary proceeding is removable as either a civil action or a criminal prosecution as defined by the removal statues.

Cir. 1989). In *Kolibash*, the court rejected the argument that removal is available only for a "civil action or criminal prosecution commenced in a State court" on the theory that applying the words of the statute was too "narrow a reading of the removal provision." *Id.* at 576. In place of applying the statute as written, the court invoked what it described as the "central concern of the removal statute," that a federal officer "shall not be forced to answer for acts performed under color of office in anything but a federal forum." *Id.* In its brief in support of Martin's removal effort, the government relies on the reasoning of *Kolibash* and the general principle that federal officer removal should be construed broadly. U.S. Br. 28.

*Kolibash* predates Congress's determination in the McDade Amendment that attorneys for the federal government should be subject to discipline to the same extent and in the same manner as other attorneys. 28 U.S.C. § 530B(a). This statute "overturned" *Kolibash,* and no other court has since followed its holding.

Furthermore, *Kolibash* was wrongly decided. The principle of broad construction does not permit a federal court to expand its "limited jurisdiction" beyond the bounds that Congress has set. *Kokkonen*, 511 U.S. at 377. On its face, Section 1442(a) permits the removal of certain civil actions and criminal prosecutions commenced in a State court against a federal officer; it does not authorize district courts to hear matters that are neither a civil action nor a criminal prosecution. The court in *Kolibash* was incorrect to use what it viewed as the "central

4

concern" and the "purpose" of Section 1442(a) to permit the removal of matters beyond what Congress authorized. 872 F.2d at 576.

Further, the government's argument that the matter against Martin is functionally a civil action because it is equivalent to a "constitutional tort" (U.S. Br. 28-29) misconstrues the nature of attorney discipline proceedings. At their core, disciplinary proceedings are the exercise of the Court's responsibility to oversee the conduct of attorneys the Court itself has authorized to practice. Whether the Court should continue such authorization, or should discipline the attorney for violations, are matters that only the Court itself can answer. Indeed, the relief at issue in a disciplinary matters is a matter within the exclusive jurisdiction of the D.C. Court of Appeals: "The license to practice law in the District of Columbia is a continuing proclamation by [the D.C. Court of Appeals] that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and an officer of the Court." D.C. Bar Rule XI § 2(a). A federal court has no authority to determine whether the Court of Appeals should or must continue to give an attorney that imprimatur.

As Martin tacitly admits, in every case other than *Kolibash* that directly addressed the issue, the courts found that attorney discipline matters are *not* removable. *See* Martin Resp. 14; *In re Clark*, 678 F.Supp.3d 112, 122-124 & n.14 (D.D.C. 2023), *affirmed on other grounds sub nom Clark v. Office of Disciplinary*

*Counsel*, 2024 WL 3385251 (D.C. Cir. July 12, 2024); *In re Doe*, 801 F. Supp. 478, 482 (D.N.M. 1992); *In re Gorence*, 810 F. Supp. 1234, 1236 (D.N.M. 1992).

None of the other cases that Martin relies on for the "weight of federal authority" involved the removal of an attorney discipline matter. He cites one case in which the Third Circuit stated in *dicta* that disciplinary matters are not "categorically exempt from removal" (citing *Kolibash*), while noting the removals at issue were "not attorney disciplinary proceedings." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 467 (3d Cir. 2015); *see* Martin Resp. 17. His next best case is *Stirling v. Minasian*, a bizarre case in which a JAG attorney in the California National Guard sued another JAG attorney in state court, claiming that the latter was engaged in unauthorized practice of law. 955 F.3d 795 (9th Cir. 2020). The Ninth Circuit permitted removal, but expressly declined to consider the argument that disciplinary matters are *not* removable, noting that the case "does not involve a disciplinary proceeding." *Id.* at 800.

Martin also cites a few cases in which removal was premised on a straightforward application of Section 1442(d)—which permits removal when a federal official is subpoenaed in a state case. *See* Martin Resp. 17-18 (discussing *Conklin v. Kane*, 634 F.App'x 69 (3d Cir. 2015) (unpublished), and *In re Charges of Unprofessional Conduct Against 99-37*, 249 F.3d 821 (8th Cir. 2001)). Those

cases did not involve the removal of an entire disciplinary proceeding, and as explained in part B below, Section 1442(d) does not permit removal here.

Beyond that, Martin cites one case in which the government unsuccessfully sought to enjoin a disciplinary case in federal court (*U.S. v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995)), and several others in which the government sought declaratory judgment in federal court against the enforcement of certain disciplinary rules. *See* Martin Resp. 14 (discussing *Stern v. U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4 (1st Cir. 2000) and *Whitehouse v. U.S. Dist. Ct. for the Dist. of R.I.*, 53 F.3d 1349 (1st Cir. 1995)); *id.* at 16-17 (discussing *United States v. Colo. Supreme Ct.*, 189 F.3d 1281 (10th Cir. 1999) and *United States v. Supreme Ct. of N.M.*, 839 F.3d 888 (10th Cir. 2016)). Martin argues that in one of those cases (*Colorado*), the court "*conducted* the preemption analysis required in *every* removal case, and that another (*New Mexico*) shows that he should be permitted to challenge the enforcement of D.C.'s disciplinary rules without facing actual prosecution. Martin Resp. 16, 17. But none of the declaratory judgment cases involved removal at all. In all of them, the government brought suit in federal district court.[3]

Martin is thus far off the mark to argue that the "great weight" of authority favors removal of his disciplinary case. To the contrary, except for *Kolibash*, which

---

[3] The cases discussed at pp. 14-15 and 18-19 of Martin's response are even further afield and Martin's reading of those cases is mistaken.

predated the McDade Amendment, every court to consider the issue in any detail—

including this Court—has held that the removal statutes *do not* authorize the removal

of state disciplinary matters to federal court. *See Clark*, 678 F.Supp.3d at 122-124;

*Doe*, 801 F. Supp. at 482; *Gorence*, 810 F. Supp. at 1236.

**B.  Section 1442(d)(1) does not make "any proceeding" removable.**

In the motion to remand, Disciplinary Counsel argued that Martin failed to

provide a short and plain statement of the grounds for removal as required by 28

U.S.C. § 1446(a). Specifically, although Martin argued that he is a federal officer

and that the disciplinary action was based on his official conduct, he did not explain

why the proceeding qualified under the removal statutes as either a civil action or a

criminal prosecution commenced in a State court. ODC Mot. 7-8. Martin now claims

that the matter is removable under Section 1442(d)(1),[4] arguing that the statute

permits the removal of "any proceeding" in which a judicial order is sought and that

the subsection specifically applies to matters in D.C. because Section 1442(d)(5)

defines "State" for purposes of such removals to include the District of Columbia.

*See* Martin Resp. 6, 7-8, 19-22. Both parts of that argument are wrong.

In full, Section 1442(d)(1) provides:

> The terms "civil action" and "criminal prosecution" include any
> proceeding (whether or not ancillary to another proceeding) to the

---

[4] Martin's reliance on Section 1442(d) does not appear in his direct response to the argument that he failed to provide a statement of the basis for removal. *See* Martin Resp. 23-24.

extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

28 U.S.C. § 1442(d)(1). The section was added to Section 1442 by the Removal Clarification Act of 2011. As the Committee Report explained: the changes were intended "to ensure that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding to a U.S. district court for adjudication." H.R. Rep. No. 112-17, pt. 1 (2011), 2011 U.S.C.C.A.N. 420, 420; *see* Martin Resp. 12 (quoting the report). In particular, the changes were proposed in response to federal cases reflecting a division in authority "as to whether State 'pre-suit discovery' laws qualify as civil actions or criminal prosecutions that are removable under Sec. 1442." *Id.* The Report recounted a case in which a court declined to permit removal of a pre-suit deposition sought against a Member of Congress because the deposition was not a removable civil action. *Id.* It summarized the problem as occurring "when a plaintiff who contemplates suit against a Federal officer petitions for discovery without actually filing suit in State court. An increasing number of Federal courts maintain this conduct just anticipates a suit; it is not a 'cause of action' as contemplated by the Federal removal statute." *Id.*

To address that problem, Section 1442(d)(1) makes a proceeding in which a judicial order is sought against a federal officer (such as for a deposition) removable

on its own. Again, the point was "to ensure that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding to a U.S. district court for adjudication." 2011 U.S.C.C.A.N. at 420.

The language does not mean, as Martin suggests, that "any proceeding" against a federal officer is removable so long as a judicial order will be sought as part of the proceeding (*see* Martin Resp. 19-20), much less "any proceeding" whatsoever against a federal official (*see id.* at 21-22). The statute makes this clear in two ways. First, it permits removal of "any proceeding" only "to the extent that" a judicial order is sought in the proceeding. 28 U.S.C. § 1442(d)(1). Second, it specifies that if removal is sought "for a proceeding described in the previous sentence"—that is, because a judicial order is sought—and there is no other basis for removal, "*only that proceeding* may be removed." *Id.* (emphasis added). Together, those provisions limit removability to the part of a state proceeding in which a judicial order is sought against the federal official. Thus, a federal official who is subpoenaed to testify in a State case may remove the proceeding seeking his testimony to federal court but not the entire underlying case. The proviso that "only that proceeding may be removed" would have no function if removal were permitted for an entire case so long as any judicial order would be sought along the way because *every* case ultimately seeks some sort of judicial order.

Indeed, Martin's disciplinary case does not fit the purpose of Section 1442(d) removal that Martin quotes in his response: he is not an individual drawn into a State legal proceeding based on his status as a Federal officer. *See* Martin Resp. 12. Rather, he is an attorney subject to the disciplinary jurisdiction of D.C. Court of Appeals because he is a member of that Court's bar.

Martin's reliance on a later revision to the definitions of Section 1442(d) is also misplaced. *See* Martin Resp. 8 & n.1, 20, 21-22. Martin argues that the disciplinary matter was "commenced in a State court" because Section 1442(d)(5) defines the term "State" to include District of Columbia and thus the D.C. Court of Appeals must be a "State court." Martin Resp. 8 & n.1. His argument assumes this minor revision repealed the McDade Amendment without explicitly saying so. He further argues that on its own, the definition means "Congress specifically intended to make § 1442 removal available to federal officers with respect to actions commenced in the courts of the District of Columbia." *Id.* at 20. That argument ignores that in addition to defining D.C. as a "State," the statute also defines the more specific term "State court" to include "the Superior Court of the District of Columbia"—without mentioning the D.C. Court of Appeals. Indeed, as Martin notes, the statutes creating the D.C. Court of Appeals and the Superior Court authorize the removal of certain civil actions and criminal prosecutions; but Martin does not mention that removal is permitted only from Superior Court, not from the

11

D.C. Court of Appeals. *See* D.C. Ct. Reform & Crim. Pro. Act of 1970, Pub. L. No. 91-358, 84 Stat 473, 475 (1970). Thus, to the extent the definitions of Section 1442(d)(5) are relevant to this case, they suggest that the disciplinary matter is *not* removable because the D.C. Court of Appeals is not "a State court" as defined in the statute.

**C.    The McDade Amendment confirms that Martin is subject to discipline in the same manner as other D.C. attorneys.**

In plain terms, the McDade Amendment provides:

> An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and *in the same manner* as other attorneys in that State.

28 U.S.C. § 530B(a) (emphasis added). The ordinary meaning of "in the same manner" is that State disciplinary actions against government attorneys must proceed in the same way as disciplinary actions against other attorneys in that State. In the District of Columbia, the manner in which disciplinary actions proceed is dictated by D.C. Bar Rule XI and the Rules of the Board on Professional Responsibility. It involves a hearing before a hearing committee, review by the Board on Professional Responsibility, and ultimately review by the D.C. Court of Appeals. None of those procedures are available in federal court. Accordingly, even if a federal court applied the substantive law of D.C., permitting removal of a disciplinary action would

12

violate Section 530B by subjecting government attorneys to D.C.'s laws and rules governing attorneys in a *different manner* than other attorneys in D.C.

Martin spends much of his response at war with this plain understanding of Section 530B. In a footnote, he attempts to recast the phrase "to the same extent and in the same manner" as a rule forbidding discrimination against government attorneys. Martin Resp. 10 & n.2. According to Martin, subjecting government attorneys to state disciplinary rules "in the same manner" as other attorneys actually means that disciplinary authorities must satisfy a special evidentiary burden: in addition to showing that the attorney violated the applicable Rules, they must also show that they "*apply* those rules 'to the same extent and in the same manner as other attorneys in that State.'" *Id.* That gets the statute exactly backwards. Section 530B was enacted to answer DOJ's assertion that its attorneys were exempt from certain state rules. It establishes an obligation on government attorneys—to obey state rules just like other attorneys—it does not create a special protection from those rules.

The phrase "to the same extent" establishes the scope of government attorneys' obligation to obey state ethics rules, and "in the same manner" establishes the method of enforcement. Those phrases do not create a condition precedent to enforcement. Martin's reading would transform a provision designed to end government attorneys' claimed exemption from professional discipline into one that

13

grants them a heightened procedural shield that no other attorney enjoys. Nothing in the text, structure, or legislative history of Section 530B supports that inversion.

Martin's other arguments about Section 530B ignore its directive that government attorneys are subject to state rules "in the same manner" as other attorneys. He argues that the statute is simply a "choice of law" rule that that requires the application of State substantive ethics law to disciplinary proceedings against government attorneys but permits them to be litigated under federal court procedures. Martin Resp. 9-11. He argues further that Section 530B "says nothing" about the forum in which disciplinary cases are brought or the procedures that apply. *Id.* at 11. But the statute does say something about the forum and procedures applicable to disciplinary matters against government attorneys. The phrase "in the same manner" is a directive about the procedure for enforcement. It means the rules must be enforced against government attorneys using the same disciplinary process, before the same authorities, and under the same rules as proceedings against every other attorney.

In support of the argument that disciplinary actions against government attorneys should proceed under federal rules, Martin relies on a DOJ regulation that defines the phrase "state laws and rules and local federal court rules" from Section 530B(a) to exclude rules "which [do] not govern ethical conduct, such as rules of procedure, evidence, or substantive law." Martin Resp. 12, quoting 28 C.F.R.

14

§ 77.2(h)(1). According to Martin, this regulation means that government attorneys need not be subject to state disciplinary procedures. *Id.* That is incorrect. The regulation's carve-out only defines which rules fall within the antecedent phrase of Section 530B—"state laws and rules and local federal court rules governing attorneys"—it says nothing about the manner in which those rules are enforced once they do apply.

The purpose of the regulation was to preserve arguments DOJ employed to challenge certain State rules before Section 530B was enacted. For example, *Baylson v. Disciplinary Board* concerned a Pennsylvania ethics rule which required a prosecutor to obtain prior judicial approval before subpoenaing an attorney to a grand jury to testify about past or present clients. 764 F. Supp. 328 (E.D. Pa. 1991), *aff'd* 975 F.2d 102 (3d Cir. 1992). The district court determined that the rule was "a rule of criminal procedure" which was "only nominally addressed to the conduct of government attorneys." *Id.* at 337. That is precisely the sort of rule which Section 77.2(h)(1) seeks to exclude from enforcement under Section 530B. Indeed, the declaratory judgment cases cited in Martin's response discuss this very distinction. *E.g.*, *Stern*, 214 F.3d at 20 (finding a rule "is more than an ethical standard. It adds a novel procedural step"); *Colo. Supreme Ct.*, 189 F.3d at 1284 (describing the issue as "whether the rule is a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that is inconsistent with federal law"). In

15

short, the regulation does not support Martin's argument that Section 530B is a "choice of law" rule that permits adjudication of State discipline proceedings in federal court. The statute says the opposite: government attorneys are subject to State ethics rules "in the same manner" as other attorneys.[5]

**D.    The other arguments advanced by Martin and the United States do not support removal.**

Underlying the arguments in both Martin's response and the government's brief is the notion that Martin will have no opportunity to present his federal defenses or they somehow will be prejudiced if his disciplinary case proceeds in the same manner as disciplinary proceedings against other attorneys in the District of Columbia. Martin's response does this by characterizing Disciplinary Counsel as seeking "exclusive jurisdiction" in State proceedings to decide the applicability of disciplinary rules, whereas the government argues that federal attorneys should not be bound by "state interpretations of the Constitution." *See* Martin Resp. 9, 12-13, 17; U.S. Br. 22-23. Both briefs act as if only a federal court may decide Martin's case simply because he is charged with violating his oath to support the Constitution and has raised a host of tortured constitutional or federal law defenses.

---

[5] The government's argument that McDade does not foreclose removal when the requirements of Section 1442 are met (U.S. Br. 29-30) incorrectly assumes that Martin has satisfied Section 1442, which he has not.

That argument is fundamentally unsound. The Constitution and federal laws are part of state law, and the Supremacy Clause "charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." *Howlett v. Rose*, 496 U.S. 356, 367 (1990). Martin is entitled to raise his federal defenses in his disciplinary proceeding, the Court of Appeals must evaluate them, and it is perfectly competent to do so.[6] In fact, the members of the Court of Appeals are appointed by the President and confirmed by the Senate. Because of the unique status of the District of Columbia, they routinely rule on issues of federal law. *See*, *e.g.*, *In re Clark*, 311 A.3d 882, 889-893 (D.C. 2024) (upholding assertion of Fifth Amendment privilege). Simply raising a defense which is based on federal law does not create a "federal-local conflict" (U.S. Br. 28) that must be resolved in federal court.

At bottom, Martin agreed to be bound by the District of Columbia Rules of Professional Conduct and to submit himself to the D.C. Court of Appeals' disciplinary jurisdiction when he became a member of the Court's bar. He did not immunize himself against violating his oath as a member of the D.C. Bar by accepting federal employment. The disciplinary action against him seeks remedies that are only meaningful in relation to the license which can only be granted by the

---

[6] Martin is incorrect to accuse Disciplinary Counsel of arguing that his "federal claims and defenses need not be litigated *at all*." Martin Resp. 7.

17

D.C. Court of Appeals. This Court lacks jurisdiction to hear the matter because there is no statutory basis to remove it. It is not a "civil action" or a "criminal prosecution" commenced in a State court or a proceeding seeking an order against Martin in his capacity as a government official. And to the extent the applicability of State ethics rules to government attorneys is in question, it was resolved when Congress enacted the McDade Amendment. Congress decreed that government attorneys are subject to the same State ethics rules as other attorneys, that they are subject to those rules to the same extent as other attorneys, and that the rules are to be enforced in the same manner as they are enforced against other attorneys.

## CONCLUSION

The Court should remand the proceeding because it lacks subject-matter jurisdiction.

Respectfully submitted,

/s/ Hamilton P. Fox, III
HAMILTON P. FOX, III
  *Disciplinary Counsel*
  D.C. Bar No. 113050

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501