UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

In the Matter of

EDWARD R. MARTIN, *Respondent*

A Member of the Bar of the
District of Columbia Court of Appeals

Bar No. 481866

CASE NO.

1:26-mc-0042-CRC

RESPONDENT'S MOTION TO RECONSIDER MINUTE ORDER
ENTERED JULY 14, 2026, GRANTING REQUEST FOR STAY OF PROCEEDINGS

Pursuant to FRCP 60(b), Respondent Martin hereby requests the Court to reconsider its Minute Order, entered July 14, 2026, granting Disciplinary Counsel's request to stay further proceedings in this matter until the Court resolves the pending Motion to Remand [3]. Disciplinary Counsel neglected to inform the Court that the law in the D.C. Circuit is that a motion alleging a "*plausible*" conflict of interest in a contested case **inverts** the normal presumption that the District Court has broad discretion to manage its docket. The applicable law is articulated in *Grimes v. District of Columbia*, 794 F.3d 83 (D.C. Cir. 2015), which "hold[s] that a plausible claim of conflict must be resolved *before* allegedly conflicted counsel or the court takes further action in the case." (emphasis added). Disciplinary Counsel asked the

Court to rule in a manner inconsistent with controlling Circuit law without mentioning or justifying any departure from the contrary authority.

*Grimes* is not some obscure, hard-to-find precedent from a foreign jurisdiction. Even a cursory look at a law school-level source as basic as *Corpus Juris Secudum* would have revealed that *Grimes v. District of Columbia* requires that "Once a party moves to disqualify an adverse party's counsel, the district court may not entertain a dispositive motion filed by the very counsel alleged to be conflicted until the court has first determined whether that counsel is disqualified." 7A C.J.S. *Attorney & Client* §220 ("Motion to disqualify attorney from representing conflicting interests").

Respondent did not file the disqualification motion lightly, or without careful consideration. Respondent's motion questions why those appointed by the District of Columbia Court of Appeals [DCCA] to enforce the D.C. Rules of Professional Conduct [RPC] do not accept that they are bound by the same conflict of interest and candor rules that apply to every other member of the Bar. *See* RPC 1.7(b)(4) (requiring recusal where there is a conflict involving the personal interests of counsel) and 3.3(a)(3) ("Fail[ure] to disclose to the tribunal legal authority in the controlling jurisdiction not disclosed by opposing counsel and known to the lawyer to be dispositive of a question at issue and directly adverse to the position of the

**2**

client[.]") And that, Respondent submits, is precisely the reason why *Grimes* holds that conflicted counsel *cannot* be permitted to submit and argue dispositive motions.

Consistent with this failure to inform in the case at bar Disciplinary Counsel filed his motion on Friday, July 10, 2026. He represented to this court that Respondent's Counsel "has not responded substantively," when he knew from the correspondence among counsel that Respondent had simply asked him about the *process* for resolving the request (i.e., the "timing" of filings) and had conveyed nothing about Respondent's position on the "substance" of ODC's proposed motion.

On Thursday, July 9, 2026, the day before Disciplinary Counsel filed his motion to stay further proceedings, Disciplinary Counsel sent an email representing that "we [ODC] are *contemplating* asking the district court to stay any proceedings, specifically including the motion to disqualify, until it decides the remand issue. What is your position?" (emphasis supplied).

Respondent's counsel replied: "What is your timetable?" noting that co-counsel, "Mr. MacDougald is on vacation this week. A response on Monday is standard." Mr. Fox replied: "I think a response [to the disqualification motion] is due tomorrow [Friday, July 10, 2026]." Ignoring protocol to await Respondent's counsels' ability to consult among themselves and get back to him, Disciplinary Counsel filed the motion to stay proceedings on the disqualification motion on July 10, thereby avoiding the necessity of filing his opposition to that motion. An *accurate*

3

description of Respondent's position on ODC's motion is that "Respondent did not consent to Disciplinary Counsel's proposed course of action when queried, but he did ask us about the schedule."

Even worse behavior by Disciplinary Counsel is the violation of RPC 3.3(a), which requires that:

> A lawyer shall not knowingly … (3) Fail to disclose to the tribunal legal authority in the controlling jurisdiction not disclosed by opposing counsel and known to the lawyer to be dispositive of a question at issue and directly adverse to the position of the client;

That failure to disclose adverse authority happened in Disciplinary Counsel's motion for stay.[1] Further, the priority *Grimes* requires for considering disqualification motions based on conflict of interest is not an idiosyncratic rule applicable only in the D.C. Circuit. Rather, it is viewed by courts across the country

---

[1] Disciplinary Counsel's lack of candor with the Court and opposing counsel is further reflected on page 3 of his motion to stay. He asserts that a stay will provide a net benefit to the ODC and the Court because "The Court will not have to grapple with questions such as issue preclusion based upon the earlier decision of the Board on Professional Responsibility." He neglects to mention that attorney James Phelan, whom Respondent also seeks to disqualify in the stayed motion, is the Executive Secretary to the Board on Professional Responsibility. In that capacity, Mr. Phalen provided the Board with legal advice as its lawyer and generated legal documents such as the "earlier decision" referred to this court's review by Disciplinary Counsel. Because both Disciplinary Counsel and the Executive Attorney are alleged to be conflicted, their conflicts of interest taint the Board's "earlier decision" and the entire proceeding before the Board on Professional Responsibility. Disciplinary Counsel also misstates the law. Proceedings before a Hearing Committee or before the Board itself culminate in "recommendations" to the DCCA, not final judgments that bind either the DCCA *or this Court. See* DCCA Rule XI §4(f)(7) (Among the BPR's duties is: "(7) To review the findings and recommendations of Hearing Committees submitted to the Board, and to prepare and forward its own findings and recommendations, together with the record of proceedings before the Hearing Committee and the Board, to the Court.") One of Respondent's federal defenses to the BPR proceedings is that the DCCA's apparent delegation of its judicial powers to the BPR under DCCA Rule XI §9(h)(1) is unconstitutional.

as absolutely necessary to protect the integrity of the judicial process and engender confidence among litigants and observers that the judicial system ensures fair and above-board procedures. *See* page 10 *infra.*

More to the point: *Grimes* is the controlling Circuit precedent, but Disciplinary Counsel neither mentioned it to Respondent's counsel when he sought feedback on the motion he was "contemplating," nor did he bring it to the Court's attention when asking the Court to take an action inconsistent with *Grimes.* Notice of controlling contrary precedent would have saved Respondent *and* the court from the time, money, and effort required to prepare a response to what is, as a matter of law in this Circuit, a frivolous motion.[2] Under D.C. Circuit law, a motion to disqualify alleging

---

[2] FRCP Rule 11 applies here. This is not the first time ODC has engaged in a questionable description of the law. The Motion for a Stay was predicated on the dispositive nature of the Motion to Remand, and thus directly implicated the *Grimes* requirement that disqualification motions based on conflicts of interest take priority. Instead, Disciplinary Counsel could not resist making a substantive misrepresentation on the merits of that motion, claiming that Respondent

> "incorrectly attempts to apply the impartiality standard for judges to Disciplinary Counsel Under *Marshall v. Jerrico, Inc.,* 446 U.S. 238 (1980), Disciplinary Counsel's 'functions resemble those of a prosecutor more closely than those of a judge.'"

Disciplinary Counsel's problem is not his lack of "impartiality"; it is his conflict of interest. *Marshall v. Jerrico, Inc.* makes that very point: a conflicted prosecutor violated the Due Process Clause by continuing to advocate once a plausible conflict has been alleged. Under *Grimes,* it *matters* that a conflicted counsel claims the right to participate in an action affecting his personal and professional interests. In fact, it also matters under *Marshall v. Jerrico, Inc., supra*, which, under RPC 3.3(a)(3), Disciplinary Counsel's motion *should have discussed fully, in particular that*:

> We do not suggest, and appellants do not contend, that the Due Process Clause imposes no limits on the partisanship of administrative prosecutors. Prosecutors are also public officials; they too must serve the public interest. *Berger v. United States,* 295 U. S. 78. 88 (1935). In appropriate circumstances, the Court has made clear that traditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which the enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law. *See Dunlop v. Bachowski,* 421 U. S. 560, 567, n. 7, 568-574 (1975); *Rochester Telephone Corp. v.*

a "plausible" conflict of interest takes priority over all other substantive motions –

including a motion to remand. The conflict presented by the facts here is beyond

"plausible."

Because the bar in the D.C. Circuit is low, consisting only of an allegation of

"*plausible*" conflict of interest, the circumstance requiring inversion of the normal

presumption that the District Court has broad discretion to manage its docket, is also

low. The case before this Court involves much more than mere "plausible" conflicts.

In *Grimes*, the Circuit explained the requirements of the applicable rule:

> That discretion is limited, however, in circumstances such as these. Because a conflict of interest could affect the fairness and impartiality of the proceeding, or the perception of fairness and impartiality, *we hold that a plausible claim of conflict must be resolved before allegedly conflicted counsel or the court takes further action in the case.*
>
> For the very reasons that the ethics rules forbid lawyers to enter into representations that create conflicts of interest or the appearance thereof, a district court must promptly address allegations of conflict. As the Sixth Circuit recently held in a similar case, *"[a] district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential*

---

*United States,* 307 U. S. 125 (1939). [footnote omitted] Moreover, the decision to enforce -- or not to enforce -- may itself result in significant burdens on a defendant or a statutory beneficiary, even if he is ultimately vindicated in an adjudication. *Cf.* 2 K. Davis, Administrative Law Treatise 215-256 (2d ed.1979). *A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision, and, in some contexts, raise serious constitutional questions.* See *Bordenkircher v. Hayes*, 434 U. S. 357, 365 (1978); *cf.* 28 U.S.C. § 528 (1976 ed., Supp. III) (disqualifying federal prosecutor from participating in litigation in which he has a personal But the strict requirements of neutrality cannot be the same for administrative prosecutors as for judges, whose duty it is to make the final decision and whose impartiality serves as the ultimate guarantee of a fair and meaningful proceeding in our constitutional regime.

*Marshall v. Jerrico, Inc.,* 446 U.S. at 249-250 (emphasis added, footnote 11 omitted)

> *to change the proceedings entirely.*" *Bowers v. Ophthalmology Grp.,* 733 F.3d 647, 654 (6th Cir.2013). The *Bowers* court emphasized that conflicts of interest are particularly problematic at the summary judgment stage, making it "especially important" to prioritize ruling on a disqualification motion before deciding a Rule 56 motion. *Id.*

*Grimes*, 794 F.3d at 90–91 (emphasis added).

Under 28 U.S.C. §1442(d), this Court acquired jurisdiction over the entire case upon removal, and under 28 U.S.C. §1447(a), "the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise." This includes disqualification issues.

### DISCIPLINARY COUNSEL'S CONFLICT EXCEEDS THE "PLAUSIBLE" STANDARD OF *GRIMES*

At the heart of this proceeding is a simple fact: In his capacity as Acting United States Attorney for the District of Columbia, Mr. Martin commenced an inquiry into Disciplinary Counsel Fox's conduct in public office. (Exhibits 1, 3, 6, 7, 12, 13) [11] In a letter dated February 25, 2025 (Exhibits 2 and 2.1) [11], Mr. Fox acknowledged the existence of the U.S. Attorney's investigation into his and his subordinates' official conduct, but rather than answer Mr. Martin's two (2) "specific" legitimate questions concerning Mr. Fox's use of the Board on Professional Responsibility (BPR) disciplinary process to achieve political aims, Mr. Fox wrapped himself in what he purports is protective *judicial* immunity offered by DCCA Rule XI §§ 19 (a, b), telling Mr. Martin that his inquiry concerning the political "weaponization"

7

of the D.C. Bar disciplinary process was sent to the wrong D.C. official. In Mr. Fox's view, Mr. Martin:

> appear[ed] to be under the impression that the Office of Disciplinary Counsel is a part of the D.C. Bar. We are not; *we are an arm of the District of Columbia Court of Appeals and are governed by the rules of that court and the rules of its Board on Professional Responsibility.* [Emphasis added.]

Exhibit 2: Letter – 02/25/25 Fox to Martin; Exhibit 2.1: Email 03/05/25 linking to Exhibit. 2. [11]

At that moment, Disciplinary Counsel and Mr. Phelan had a stark choice: The "ethical" option would have been to cooperate fully with the U.S. Attorney's investigation into ODC's behavior and recuse Disciplinary Counsel from any subsequent ODC investigations into Mr. Martin's behavior.[3]

The "unethical" option, which Mr. Fox and Mr. Phelan chose, was to circle the wagons, wrap themselves in judicial immunity, and use the *judicial* powers delegated to them by the DCCA to retaliate against Mr. Martin.[4] Mr. Phalen, Mr.

---

[3] *Compare* BPR Rules 2.8-2.9 (requiring responses to Disciplinary Counsel's requests for information) and D.C. Rules of Professional Conduct 1.7(b)(4) (requiring recusal when the "lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.").

[4] The irony of Disciplinary Counsel's "conflicted" – and thus highly selective – reading of the case law on disqualification for conflict of interest should not go unnoticed. The disqualification for personal interest rule in *Grimes, Marshall v. Jerrico, Inc., supra*, note 1, and the case law discussed below, applies to prosecutors appointed in the Executive Branch *and* to private attorneys. The irony is that, in his effort to distance himself from the *judicial* function for which he is hired by the BPR (ascertaining lawyer "fitness" to practice), he underscores the very conflict at the heart of RPC

Fox, and the Chair of the BPR not only "knew" that Mr. Martin's complaints to the DCCA were about Fox's behavior, but the proffered correspondence in the Motion to Disqualify shows that both Fox, the Chairs of the BPR, and the Chief Judge *acknowledged* that fact. Exhibits 5, 11, 14, 15, 16, 18, and 19.[5] In short, *all* of them *permitted* Fox to file pretextual, retaliatory, formal charges falsely alleging that Mr. Martin's complaints to the DCCA were *ex parte* communications.

### RESPONDENT WILL SUFFER HARM FROM A STAY

Disciplinary Counsel's statement that "Respondent is not harmed by the stay" that ODC proposed here, Motion to Stay at 3, shows the wisdom of the D.C. Circuit's approach. As Judge Pillard put it:

> Resolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel. [footnote omitted]
>
> The structural importance of counsel's avoidance of conflicts of interest and any appearance of such conflicts, and the high respect due to binding requirements of professional responsibility, support the *Bowers* approach. ***Once a party moves to disqualify an adverse party's counsel, the district court may not entertain a dispositive motion filed by the very counsel alleged to be conflicted until the court has first determined whether that counsel is disqualified***. As in *Bowers,* the district court here erred in first granting summary judgment and then denying as moot the motion to

---

1.7(b)(4). Mr. Fox and Mr. Phalen's *only* function is to serve the interests of DCCA – a point that Mr. Fox himself admitted in Exhibits 2 and 2.1. Those interests have been irrevocably compromised in this case.

[5] *See* D.C. RPC 1.1(f) ["'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." All exhibit references are to Respondent's original motion to disqualify, incorporated by reference herein.

disqualify. That error requires us to vacate the district court's grant of summary judgment and its denial of the motion to disqualify, and remand for the district court to consider the motion to disqualify before ruling on summary judgment. [footnote omitted] [emphasis supplied]

*Grimes, supra*, 794 F.3d at 90–91.

The fact is that Respondent not only remains under a cloud of investigation and charges, but absent the required disqualification his Bar disciplinary case will be decided by a BPR whose personnel are just as conflicted as Mr. Fox and Mr. Phalen. Not only Respondent, but the public confidence and the very integrity of the judicial process will suffer.

Without fidelity to legal principles, without adherence to integrity, the law and our system of laws are nothing.

### THE WEIGHT OF AUTHORITY SUPPORTS THE D.C. CIRCUIT'S HOLDING THAT DISQUALIFICATION MOTIONS TAKE PRIORITY OVER OTHER DISPOSITIVE MOTIONS

In *Sinclair v. State of Maryland*, 278 Md. 243, 260, 363 A.2d 468, 478 (1976), the Maryland Court of Appeals was confronted, like in this case, with "a record which bristles with unresolved nonfrivolous allegations of specific prosecutorial conflicts of interest." Its opinion contains a useful survey of the law concerning lawyers with a variety of conflicts who nonetheless seek to serve as prosecutors. *Sinclair's* survey shows that courts take a dim view of conflicted lawyers who seek to serve as prosecutors. *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 249-250 (1980), discussed in footnote 1, *supra*.

**10**

In *State v. Tate,* 185 La. 1006, 171 So.2d 108 (1936), for example, the Louisiana Supreme Court put it this way:

> This rule, founded on justice and fair dealing, we think is intended not only to restrain the offer of illegal evidence or the violation of the orderly rules of procedure by prosecuting officers, but also to require their recusation in those cases in which their interest, directly or indirectly, may be such as to cause them to sacrifice impartial justice to personal advantage.

171 So. at 112 (citations omitted), quoted in *Sinclair*, *supra*, 278 Md. at 257–58, 363 A.2d at 476–77.

The prevailing precedent and rule is that the BPR should have required Fox and Phalen to recuse, rather than permit their employees to file formal disciplinary charges against Mr. Martin tainted *ab initio* by their conflicts of interest. This rule is both broad and applicable to attorney disciplinary cases. *In re Ridgely*, 9 Terry 464, 48 Del. 464, 106 A.2d 527 (1954), the Delaware Supreme Court expressed in an attorney-discipline case:

> Now, the exercise of (discretionary) power by the prosecuting officer-the decision to prosecute or not to prosecute . . . -involves the performance of one of the most difficult and delicate functions of his office. It requires the weighing and balancing of interests that may, and often do, conflict-those of the public and those of the victim . . .. *One thing is certain. The prosecuting officer cannot perform this function-he cannot discharge his public obligation-if his personal interests are involved*….

*In re Ridgely*, 48 Del. at 471-72, 106 A.2d at 531 (emphasis added). See also, *Sinclair*, *supra*, 278 Md. at 257–58, 363 A.2d at 77; and the myriad other cases referenced in *Sinclair* that make the same basic point:

**11**

*See, e.g., Ganger v. Peyton*, 379 F.2d 709 (4th Cir. 1967); *People v. __*, 162 Colo. 174, 427 P.2d 330 (1967) (per curiam); *People ex rel. Colorado Bar Ass'n v. __*, 90 Colo. 440, 9 P.2d 611 (1932); *In re Guardianship of Angell*, 26 Ill.App.2d 239, 167 N.E.2d 711 (1960); *State v. Jones*, 306 Mo. 437, 268 S.W. 83, 85-86 (1924); *In re Truder*, 37 N.M. 69, 17 P.2d 951 (1932); *People v. Krstovich*, 72 Misc.2d 90, 338 N.Y.S.2d 132 (Greene County Ct. 1972); *In re Williams*, 174 Okl. 386, 50 P.2d 729 (1935); *Hall v. State*, 24 Okl.Cr. 197, 217 P. 229 (1923); *State v. Basham*, 84 S.D. 250, 170 N.W.2d 238 (1969); *Hosford v. Eno*, 41 S.D. 65, 168 N.W. 764 (1918); *Callahan v. Jones*, 200 Wash. 241, 93 P.2d 326 (1939). *But see Commonwealth v. Dunlap*, 233 Pa. Super. 38, 335 A.2d 364 (1975); *State v. Goodwin*, 25 S.C. 403, 158 S.E.2d 195 (1967). See in addition cases in which courts have disapproved of an attorney, who after representing an individual, subsequently joined the state's staff and prosecuted his former client on charges which were related to the subject matter of the employment. *State v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972); *People v. Gerold*, 265 Ill. 448, 107 N.E. 165, 175-78 (1914); *State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (Ct. App.), *cert. denied*, 86 N.M. 372, 524 P.2d 988 (1974); *Steeley v. State*, 17 Okl. Cr. 252, 187 P. 821, 822-24 (1920).

*Sinclair v. State*, 278 Md. at 258, 363 A.2d at 477.

## CONCLUSION

Respondent did not file the disqualification motion or this motion to reconsider lightly and without careful consideration of the weighty personal and constitutional issues involved in this case. As guardians of the integrity of the D.C. Bar members, including those who serve as prosecutors, *see* RPC 3.8, Mr. Fox and Mr. Phelan had (and continue to have) a professional ethical *obligation* to be candid with the court on all matters. They were obliged to disclose what they knew about *Grimes* and the well-settled case law mandating resolution of disqualification motions based on conflict of interest *before* the resolution of dispositive motions. Now that they have

been caught, they have an obligation to explain why their research (assuming they did any) did not uncover controlling law in this Circuit. The conflict in this case goes far beyond "plausible." Disciplinary Counsel is so deeply engaged in an open and obvious retaliatory misuse of prosecutorial discretion that he has breached both his duty of candor to the Court, RPC 3.1, and his duty to provide "competent" representation to his client – the BPR created by the Court of Appeals. RPC 1.1.

The breach of all these obligations not only misled this court about the state of the law in the D.C. Circuit; other vital factual information relating to correspondence among counsel; and the extent of the conflict, but it also wasted the court's time and Respondent's counsel's time. RPC 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law."); F.R.Civ.P. 11.

ODC's case should never have been brought against Respondent. That ODC did so notwithstanding the rather shocking conflicts of interest documented in the Motion to Disqualify is inexplicable *but for* those actual conflicts of interest. Those conflicts also explain ODC's failure to address controlling Circuit case law and the failure to reveal the conflicted Mr. Phelan's role in the decision by the Board on Professional Responsibility which Disciplinary Counsel *erroneously* claims as the basis for a claim of "issue preclusion" despite 28 U.S.C. § 1450 expressly

authorizing the Article III court to "dissolve[] or modif[y]" the local court's orders. For the reasons stated above, Respondent, Edward R. Martin, submits that the Court should reconsider its ruling on the Motion to Stay further proceedings until the Court decides Disciplinary Counsel's Motion to Remand and proceed directly to the resolution of the disqualification motion.

Respectfully submitted this 15th day of July 2026.

/s/ *Christopher A. Byrne, Esq.*
Christopher A. Byrne, Esq.
DC Bar No. 928424
Byrne Law PLLC
1050-30th St Northwest
Washington, DC 20007
(202) 487-6800
cabesq@protonmail.com

Harry W. MacDougald
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP
6 Concourse Parkway, Suite 2400
Atlanta, Georgia 30328
(404) 843-1956
hmacdougald@ccedlaw.com

Robert A. Destro
Ohio Bar #0024315
4532 Langston Blvd. 520
Arlington, VA 22207
202-905-6064
robert.destro@protonmail.com

14

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Edward R. Martin, Jr.,**<br><br>**A member of the Bar**<br><br>   **of the District of Columbia Court of Appeals**<br><br>**Bar No. 481866** | Case No.   1:26-mc-0042-CRC |

## I.   [PROPOSED] ORDER

On consideration of Respondent's motion to reconsider the Court's July 15, 2026, Minute Order staying further proceedings, the Court finds that it is appropriate to deny the motion to stay further proceedings. Accordingly, the Court's Minute Order entered July 14, 2026, at 8:58 am is hereby rescinded and the motion to stay is denied.

SO ORDERED.


Dated: _____          _____

                                          Hon. Christopher R. Cooper  United  States District Judge

**15**

## **CERTIFICATE OF SERIVCE**

I hereby certify that on this 15th day of July 2026 I served counsel for the opposing parties with a copy of the foregoing *Motion* by email addressed to:


Hamilton P. Fox
D.C. Bar Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

James Phalen, Esq.
 Executive Attorney D.C. Bar
Office of the Executive Attorney
Building A
515 5th Street NW
Washington DC 20001
Phalenj@dcoea.org


/s/ *Christopher A. Byrne*
Christopher A. Byrne, Esq.
DC Bar No. 928424
Byrne Law PLLC
1050-30th St Northwest
Washington, DC 20007
(202)487-6800
cabesq@protonmail.com