**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In the Matter of** | |
| **EDWARD R. MARTIN,** | **CASE NO.** |
| **Respondent, A Member of the Bar of the District of Columbia Court of Appeals** | **1:26-mc-0042-CRC** |
| **Bar No. 481866** | |

# RESPONDENT'S SUPPLEMENTAL BRIEF

Comes now Edward R. Martin, Respondent in the above-entitled matter, and submits this supplemental brief on the issue noted in the Court's Minute Order of October 20, 2026, "whether the bar disciplinary proceedings at issue 'commenced in a State court,' as required by 28 U.S.C. § 1442(a)."[1]

## ARGUMENT

## I. BY STATUTE, THE DISTRICT OF COLUMBIA COURT OF APPEALS IS A "STATE COURT."

### A. The Plain Language of 28 U.S.C. §1442 Provides that the District of Columbia Court of Appeals is a "State Court" for Purposes of Removal Jurisdiction

Section 1442(a) requires that the removed action originate in a "State court." 28 U.S.C. §1442(d)(5) provides that "[t]he term 'State' includes the District of

[1] Respondent reserves his contention that under *Grimes v. District of Columbia*, 794 F.3d 83 (D.C. Cir. 2015) a plausible claim of a disqualifying conflict like the one asserted against the Office of Disciplinary Counsel in this case is a threshold issue.

Columbia ….” Other relevant jurisdictional statutes similarly define D.C. as a “State”:

- 28 U.S.C. §1257(b), which provides that “For purposes of this section [governing review of State court judgments by writ of certiorari], the term “highest court of a State” includes the District of Columbia Court of Appeals.”
- 28 U.S.C. §2113, which provides that “For purposes of this chapter [governing appeals to the Supreme Court of the United States], the terms “State court”, “State courts”, and “highest court of a State” include the District of Columbia Court of Appeals.”; and
- U.S. Supreme Court Rule 47, which provides, in relevant part: “The term “state court,” when used in these Rules, includes the District of Columbia Court of Appeals, …”.

This Court and the D.C. Circuit have also held that the DCCA is a “State court” for purposes of *habeas corpus* petitions. In *Banks v. Smith*, 377 F. Supp. 2d 92, 94 (D.D.C. 2005)*,* this Court observed that

> The D.C. Circuit has consistently held that when considering a writ of *habeas corpus,* a prisoner of the District of Columbia is considered a State prisoner, when the prisoner is held under a conviction of the D.C. Superior Court.” *Garris v. Lindsay*, 794 F.2d 722 (D.C. Cir.), cert. denied, 479 U.S. 993, 107 S.Ct. 595, 93 L.Ed.2d 595 (1986*); see also Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308-10 (D.C.Cir.2002) (applying *Garris* to a revised version of 28 U.S.C. § 2253). The D.C. Circuit treats the “local courts as state courts for the purposes of ... federal habeas corpus

> jurisdiction." *Milhouse v. Levi*, 548 F.2d 357, 360 n. 6 (D.C.Cir.1976) (internal quotation omitted).

*See also Brown v. Williamson Tobacco Corp v. Merrell Williams,* 62 F.3d 408, 413 n. 3 (1995). Because Congress delegated disciplinary authority over D.C. lawyers to the District of Columbia Court of Appeals, these cases necessarily originate in a "State court" for purposes of section 1442(a).

### B. District of Columbia Superior Court is *also* a "State Court" for purposes of Removal Jurisdiction.

The plain language of Section 1442(d)(6) provides that "The term 'State court' *includes* the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court." (Emphasis added). So too does 28 U.S.C. §1332(e), which explicitly provides that "The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico."

Thus, any effort to *restrict* the removal jurisdiction of this Court runs counter to not only the plain language of Section 1442, but also to the entire statutory framework that grants the courts of the District of Columbia original and appellate jurisdiction. Indeed, prior to Congressional amendments to section 1442, this Circuit adopted an analysis framework that resulted in an expansive, not restrictive, interpretation of section 1442. *See*, *Brown & Williamson*, *supra*.

When Congress adopted the District of Columbia Court Reform and Criminal Procedure Act of 1970,[2] it replaced the previous D.C. court system with two Article III courts: the U.S. District Court for the District of Columbia and the U.S. Court of Appeals for the District of Columbia, and two Article I courts, the Superior Court for the District of Columbia and the District of Columbia Court of Appeals ["DCCA"] – that serve as the D.C. equivalent to state and territorial courts. The Act also integrated the D.C. Article I courts into the statutory framework that governs the federal courts' original and appellate jurisdiction to review cases arising in "state courts."

By a settled rule of statutory interpretation "the word 'includes' is usually a term of enlargement, and not of limitation." *Burgess v. United States*, 553 U.S. 124, 131, (2008) *citing* 2A N. Singer & J. Singer, SUTHERLAND ON STATUTORY CONSTRUCTION § 47:7 at 305; *Samantar v. Yousuf*, 560 U.S. 305, 317, n.10 (2010) (same); *American Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 796 F.3d 18, 25 (D.C. Cir. 2015) (same, *citing Burgess*).

Consistent with this rule, the verb "includes" should be read here as a term of enlargement and not a limitation that would exclude the D.C. Court of Appeals, which is obviously a "court" in what the Congress deems, for purposes of removal

---

[2] The Constitution, art. I, § 8, cl. 17, empowers Congress to establish courts in the District of Columbia which Congress overhauled in 1970. See, 84 Stat. 475, D.C. Code § 11–101.

jurisdiction, to be a "State". Any other reading would contradict the "whole act" canon. To say that the D.C. Court of Appeals is not a "State court" would contradict the plain language of subsection (d)(5), defining D.C. as a State, the self-evident fact that the D.C. Court of Appeals is a court, and that its final judgments with respect to local law are reviewable only on *certiorari*. *See* Pub. L. No. 91-358, §11-102. *See also Pernell v Southall Realty*, 416 U.S. 363, 368 & n.4 (1974)(holding that DCCA "decrees on matters of local law — both common law and statutory law — will be treated by this Court in a manner similar to the way in which we treat decisions of the highest court of a State on questions of state law.")

> It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," *Gustafson v. Alloyd Co.*, 513 U. S. 561, 569 (1995), and "fit, if possible, all parts into an harmonious whole," *FTC v. Mandel Brothers, Inc.*, 359 U. S. 385, 389 (1959).

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Similarly,

> Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme -- because the same terminology is used elsewhere in a context that makes its meaning clear, *see, e.g., Sorenson v. Secretary of Treasury*, 475 U. S. 851, 475 U. S. 860 (1986), or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law, *see, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U. S. 41, 481 U. S. 54 (1987); *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U. S. 609, 412 U. S. 631-632 (1973); *Jarecki v. G. D. Searle & Co.*, 367 U. S. 303, 367 U. S. 307-308 (1961).

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988).

The whole-act canon also requires due consideration of 28 U.S.C. § 1445, captioned "Nonremovable actions." It lists four categories of nonremovable actions. Bar disciplinary proceedings are not on the list, with obvious import. This exclusive statutory list of nonremovable actions may not be judicially enlarged through a concatenation of legal fictions concerning the form of the action or the forum from which it originates.

## II. AS REQUIRED BY D.C. CODE §11-2503(b), DCCA RULE XI REQUIRES A JUDICIAL ORDER TO IMPOSE SERIOUS DISCIPLINE ON AN ATTORNEY

When Congress created the DCCA, it conferred the power to discipline lawyers admitted to its Bar. D.C. Code §§11-2502 – 11-2504. Under Rule XI, which rests on that authority, D.C. Bar disciplinary cases originate as preliminary administrative proceedings conducted for DCCA by the disciplinary office created by the DCCA to handle the initial stages of disciplinary proceedings, the Board on Professional Responsibility [BPR]. DCCA Rules XI § 4 and § 8(c). Disciplinary Counsel, an employee of the BPR[3], obtains prior approval of a volunteer attorney, the Contact Member[4], and files a petition with the Executive Attorney, another

[3] DCCA Rule XI §4(e)(2).

[4] *See* DCCA Rule XI § 4(e)(4, 5) (appointment of Hearing Committee members); and §5(d) (duties of Contact members).

employee of the BPR,[5] stating the formal charges under oath. DCCA Rule XI § 8(c). Such charges are litigated with sworn testimony and governed at least in part by the Superior Court Rules of Civil Procedure before a Hearing Committee, and reviewed by the BPR, which then makes *recommendations* to the DCCA concerning findings of fact and conclusions of law. When Disciplinary Counsel seeks "discipline in the form of disbarment, suspension requiring proof of fitness as a condition of reinstatement, or suspension of one year or more without a fitness requirement," it is *Congress,* not the DCCA, that requires an adversary proceeding before the DCCA and a judicial order imposing discipline. D.C. Code §11-2503(b) (requiring a hearing and decree). DCCA Rules XI §§9(g)(1) and 9(h)(1), rest on that statutory authority.

Since Section 1442(d)(1) provides that "The terms 'civil action' and 'criminal prosecution' *include any proceeding* (whether or not ancillary to another proceeding) to the extent that in such proceeding *a judicial order*, including a subpoena for testimony or documents, *is sought* or issued" (emphasis added), it does not matter whether the case is characterized as "civil" or "criminal." The only relevant *statutory* question is whether Disciplinary Counsel seeks "a judicial order" order imposing discipline on Mr. Martin. It is undisputed that "a judicial order" imposing discipline under Rule XI §9(h) is the relief Disciplinary Counsel is seeking in this case.

---

[5] DCCA Rule XI §4(e)(3)

The argument that hybrid proceedings (however defined) are not removable was definitively rejected by Congress in The Removal Clarification Act of 2011,[6] which clarified the definition of "civil action" and "criminal prosecution" to "include any proceeding … to the extent that … a judicial order … is sought." (Emphasis added). Again, this definition uses "include" as a term of enlargement, and not limitation. Consistent with this text, the House Report for The Removal Clarification Act of 2011 explains:

> The purpose of the law is to take from State courts the indefeasible power to hold a Federal officer or agent criminally or civilly liable for an act allegedly performed in the execution of their Federal duties. This does not mean Federal officers can break the law; it just means that these cases are transferred to U.S. district court for consideration. Congress wrote the statute because it deems the right to remove under these conditions essential to the integrity and preeminence of the Federal Government within its realm of authority. Federal officers or agents, including Members of Congress, should not be forced to answer for conduct asserted within their Federal duties in a state forum that invites "local interests or prejudice" to color outcomes. In the absence of this constitutionally based statutory protection, Federal officers, including Members of Congress, could be subject to political harassment, and Federal operations generally would be needlessly hampered.

House Report: No. 112–17, pt. 1, p. 3.

The Supreme Court has repeatedly held that the removal statute should be ***liberally construed*** to uphold its remedial purposes of affording a federal forum to federal officers for adjudication of their federal defenses. *Willingham v. Morgan*, 395

[6] This Circuit has considered the hybrid form of action argument with disfavor, terming it a mere "linguistic argument" *See*, *Brown & Williamson, supra*, at p. 412.

U.S. 402, 406 (1969); *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879). *Accord K&D LLC v. Trump Old Post Office LLC*, 951 F.3d 503, 506 (D.C. Cir. 2020) ("We must construe the statute liberally in favor of removal." *quoting Watson v. Philip Morris Cos*., 551 U.S. 142, 147 (2007)).

Liberally construed, bar disciplinary proceedings in the District of Columbia Court of Appeals originate in a State court within the meaning of section 1442(a), (d)(5) and (d)(6). A restrictive reading of "State court" that excludes the D.C. Court of Appeals or the administrative apparatus it created to investigate, hold hearings and make recommendations for discipline would frustrate Congressional intent to afford federal officers a federal forum for adjudication of their federal defenses.

In addition to these positive reasons for liberally construing the statute as the Supreme Court requires, we suggest that there are strong policy and historical reasons against construing it narrowly. Congress was well aware that, without a broad federal removal mandate, States and municipalities will be incentivized to evade removal by creating administrative tribunals that can be weaponized by hostile, prejudiced, biased, or conflicted D.C., State, or Territorial officials as a means to "resist" the exercise of federal law enforcement authority or to exert direct control over federal officers seeking to enforce federal law.

The possibility that such measures might be adopted to persecute a federal officer cannot be dismissed as a groundless worry. Throughout our nation's history

federal policies and federal officers have drawn extreme hostility many times in various regions, requiring removal to federal court to protect the interests of the national government. In a contemporary example, several jurisdictions around the United States have threatened state law prosecutions of federal officers enforcing federal immigration law. The instant case against Mr. Martin clearly fits this paradigm.

The antipathy of the District of Columbia and its citizens to President Trump and the officers of his administration needs no elaboration. The District voted 90.86% for Hillary Clinton in 2016, 92% for President Joe Biden in 2020, and 90.28% for Kamala Harris in 2024[7] – more lopsided by far than any State in the United States.

28 U.S.C. §§ 1441 and 1442 presume that State and deemed-State cases begin in a trial court, like a Superior Court, but they do not *exclude* cases that arise, like the present case, in the original jurisdiction of an appellate court. Were the D.C. Superior Court to issue a subpoena requiring the production of federal documents by a present or former federal officer, or to hold a federal officer in contempt for exerting a federal privilege, the federal officer can submit to the jurisdiction of the court issuing the order and litigate the federal claim or defense before that court, or

---

[7] *See United States presidential elections in the District of Columbia*, WIKIPEDIA, https://en.wikipedia.org/wiki/United_States_presidential_elections_in_the_District_of_Columbia (last visited Oct. 28, 2026).

remove under Section 1442 to the appropriate Article III court within the statutory deadline. Given the thirty (30) day deadline for removal, federal officers litigating in the D.C. courts do not have the option of waiting until a case arising in the Superior Court or in the disciplinary jurisdiction of the DCCA is on appeal. *See* 28 U.S.C. §§ 1446(b)(1); 1455(b)(1). The statutory language is clear: judicial orders directed to federal officers by either the D.C. Superior Court or the DCCA are removable under Section 1442.

States and deemed-States have options for litigating claims and defenses. Typically, they can either: (1) choose to commence litigation using the ordinary process of a court like a Superior Court; or (2) use an administrative process to find facts subject to later judicial review; or (3) use something like original jurisdiction of the Supreme Court, which commits resolution of all questions of fact and law to the appellate court, which in original jurisdiction cases (like a State-to-State land dispute) appoints a special master to find the facts. *See*, *e.g.*, *New Jersey v. New York*, 513 U.S. 924 (1994) (appointing special master in original jurisdiction case).

Here, bar disciplinary cases are originally litigated in an administrative arm of the highest court in D.C. rather than in the trial court. Every aspect of the bar disciplinary process is an expression or exercise of judicial authority, not executive authority, and it occurs in a system created and governed by Court rules. The BPR and its Hearing Committees created by the DCCA conduct evidentiary hearings, rule

on evidence, make findings of fact and recommend conclusions of law. By their nature, these are judicial functions – and they conclude, as D.C. Code §11-2503(b) requires, with a hearing and judicial order.

In *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571 (4th Cir. 1989) the Court held a state bar disciplinary proceeding against a U.S. Attorney was subject to removal under Section 1442, rejecting arguments based on the form of the proceeding and the nature of the body in which it originated:

> The State Bar contends, however, that, regardless of whether the "under color" of office test is met, the disciplinary proceeding is not a "civil action or criminal prosecution commenced in a State court," 28 U.S.C. § 1442(a), and is therefore not removable under the federal officer removal statute. We reject such a narrow reading of the removal provision.
>
> The central concern of the removal statute is that a federal officer or agent shall not be forced to answer for acts performed under color of his office in anything but a federal forum. Regardless of what label is attached to the proceeding, § 1442(a)(1) should be construed in light of this purpose. *North Carolina [v. Carr]*, 386 F.2d [129] at 131 [(4th Cir. 1967)]; *Wisconsin v. Schaffer*, 565 F.2d 961, 963 (7th Cir.1977). The form that the state action takes is therefore not controlling; "it is the state's power to subject federal officers to the state's process that § 1442(a)(1) curbs." *Nationwide Investors [v. Miller]*, 793 F.2d [1044.] at 1047 [(8th Cir. 1977)].

*Id*. at 576.

The specific issue noted in the Court's Minute Order, whether state administrative bar disciplinary proceedings were removed from a "State court," was addressed in *Kolibash* as follows:

> The Committee on Legal Ethics is defined as an instrumentality of the West Virginia Supreme Court of Appeals and its procedures are adjudicatory in nature. The Committee is authorized to hold evidentiary hearings, subpoena witnesses, take testimony under oath in an adversary proceeding, and otherwise conduct itself as a court. It also makes factual findings and recommends attorney sanctions to the West Virginia Supreme Court of Appeals. A Committee investigation can result in public reprimands, suspensions, or disbarment of lawyers who practice in West Virginia. To hold this proceeding outside the operation of the removal statute would be to elevate form over substance. If a state investigative body operates in an adjudicatory manner, and if a federal officer or his agent is subject to its process, the statutory requirements of § 1442(a)(1) are satisfied. *See Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38, 43-45 (1st Cir.1972) (interpreting a similar provision in 28 U.S.C. § 1441).

*Id*. *Kolibash* is the most and indeed, the only federal appellate decision on point, and it should be followed here.

The Court in *In Re Clark*, I678 F.Supp.3d 112 (D.D.C. 2023), held that Mr. Clark's D.C. Bar disciplinary case was not removed from a "State Court" for purposes of § 1442. The trial court's remand order was affirmed on other grounds, that removal notice was untimely. *In re Jeffrey B. Clark*, 2024 WL 3385251 (D.C. Cir. Case No. 23-7073 July 12, 2024). The D.C. Circuit did not address whether the case came from a "State court."

The trial court in *In Re Clark* rejected *Kolibash* on the grounds that it applied a "functional" test to find that bar disciplinary proceedings were removed from a "State court," and that this "functional" test expanded removal jurisdiction beyond the language of the statute. That argument is, at best, a dubious criticism where the

Supreme Court has emphasized repeatedly that the federal officer removal statute should be liberally construed to achieve its remedial purposes:

> The federal officer removal statute is not 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts.

*Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). "In cases like this one, Congress has decided that federal officers, and indeed the federal government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* at 407. *See also Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879) ("' 'the general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers.'" quoting *Martin v. Hunter's Lessee,* 1 Wheat 363 (1816)).

The D.C. Circuit similarly followed the functional approach in *Brown & Williamson, supra*, allowing removal of a subpoena despite arguments that, because it could be characterized as a "hybrid" proceeding, it was not removable. The D.C. Circuit has never retreated from that position.

Even more decisively, the Removal Clarification Act of 2011 in substance legislatively adopts the "functional test," vindicating the prescient analyses in *Kolibash* and *Brown & Williamson*.

In rejecting the Fourth Circuit's holding in *Kolibash*, the District Court in *In Re Clark* relied on *Or. Bureau of Lab. and Ind. ex rel. Richardson v. West Comms.*, 288 F.3d 414, 418–19 (9th Cir. 2002). In that case the Ninth Circuit held that an administrative tribunal of a state executive branch agency, the Oregon Bureau of Labor and Industrial Relations, was not a "court" and therefore the case could not be removed.

But *Richardson* is clearly distinguishable in that it was removed under 28 U.S.C. § 1441. Unlike section 1442, the federal officer removal statute, section 1441 is "strictly construed against removal jurisdiction." *Id. See Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017) ("Notably, 'federal officer removal' under 28 U.S.C. § 1442 is unlike other removal doctrines: it 'is not "narrow" or "limited."'" (cleaned up).

## CONCLUSION

For the foregoing reasons, the Court should hold that D.C. Bar disciplinary proceedings originate from a State court, and that they seek an order of discipline, and can, therefore, be removed to federal court.

Respectfully submitted this 30th day of October, 2026.

*/s/ Harry W. MacDougald*
Harry W. MacDougald*
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP

*/s/ Robert A. Destro*
Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207

6 Concourse Parkway, Suite 2400
Atlanta, Georgia 30328
(404) 843-1956
hmacdougald@ccedlaw.com
* *Pro Hac Vice*

202-319-5303
robert.destro@protonmail.com

* *Pro Hac Vice*

/s/ Christopher A. Byrne, Esq.
Christopher A. Byrne, Esq.
DC Bar No. 928424
Byrne Law PLLC
1050-30th St Northwest
Washington, DC 20007
(202) 487-6800
cabesq@protonmail.com

CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this "Respondent's Supplemental Brief" by email and by filing it with the Court's electronic filing system which will cause electronic service to be made upon them

Hamilton P. Fox
Theodore (Jack) Metzler
D.C. Bar Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org
metzlerj@dcodc.org

This this 30 day of October, 2026.

*/s/ Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 453076

Caldwell, Carlson, Elliott & DeLoach, LLP
6 Concourse Parkway, Suite 2400
Atlanta, Georgia 30328
(404) 843-1956
hmacdougald@ccedlaw.com