**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE EDWARD R. MARTIN, JR.** | |
| **HAMILTON P. FOX, III,**<br>Petitioner,<br>v.<br>**EDWARD R. MARTIN, JR.,**<br>Respondent. | Case No. 26-mc-42 (CRC) |

**MEMORANDUM OPINION**

The question in this case is whether a District of Columbia bar disciplinary proceeding brought against the former interim U.S. Attorney for the District of Columbia, based on his conduct while in that position, may be removed to federal court under the federal-officer removal statute, 28 U.S.C § 1442. Because the proceeding was not "commenced in a State court" as required for removal, the Court concludes that it lacks subject matter jurisdiction and must therefore remand the matter to the District of Columbia Court of Appeals' Board on Professional Responsibility, where it began.

## I. Background

### A. Regulation of Legal Practice in the District of Columbia

Congress created the District of Columbia Court of Appeals ("DCCA"), D.C.'s highest court, in 1970. Court Reorganization Act, Pub. L. 91-358, §§ 11-101(2)(A), 11-102, 11-701, 84 Stat. 473, 478 (1970). Its Article I judges are nominated by the President and confirmed by the Senate. Pub. L. 91-358, §§ 11-1501(a), 84 Stat. 491. By statute and inherent authority, the

DCCA can "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." D.C. Code § 11-2501(a); see In re Diviacchi, 308 A.3d 1194, 1198 (D.C. 2024) (recognizing the DCCA's "inherent power over members of the legal profession" (cleaned up)). Pursuant to this authority, the DCCA created the Board of Professional Responsibility ("Board") to "consider and investigate any alleged ground for discipline" of attorneys licensed in D.C. and to make "findings and recommendations" to the DCCA. D.C. Bar R. XI § 4(e)(1), (7). The Board, in turn, established the Office of Disciplinary Counsel ("ODC") to "investigate all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of this Court" and to "prosecute all disciplinary proceedings" to the extent necessary. Id. § 6(a)(2), (4).

The attorney-discipline process follows a prescribed structure. First, ODC "investigates a complaint of attorney misconduct and decides whether to open an investigation to ascertain if grounds exist to initiate formal proceedings." Klayman v. Fox, No. 18-CV-1579 (RDM), 2019 WL 2396538, at *1 (D.D.C. June 5, 2019) (cleaned up), aff'd sub nom. Klayman v. Lim, 830 F. App'x 660 (D.C. Cir. 2020); see D.C. Bar R. XI § 6(a)(2). At the conclusion of the investigation, ODC may "dismiss the complaint," "informally admonish the attorney under investigation," "institute formal charges," or else resolve the charges via a "negotiated disposition." Id. §§ 8(b), 12.1(b). ODC prosecutes any formal charges before a Board-appointed Hearing Committee comprised of two members of the D.C. Bar and one non-lawyer. Id. §§ 4(e)(4)–(5), 6(a)(4). The members of the Hearing Committee then "submit their findings and recommendations on formal charges of misconduct to the Board." Id. § 5(c)(2).

After the Hearing Committee provides a recommendation, "[e]xceptions to the report of a Hearing Committee may be filed," at which point the Board must provide the attorney facing

disciplinary charges and ODC with an opportunity to submit briefs and to present oral argument. Id. § 9(a)–(b). "The Board then either adopts or modifies the recommendation of the Hearing Committee and, unless the Board dismisses the charges or remands the case to the Hearing Committee, the Board must submit its own findings and recommendation to the DCCA." Klayman, 2019 WL 2396538, at *2 (citing D.C. Bar R. XI § 9(d)). If the Board recommends disbarment or suspension with certain conditions, the DCCA must provide the attorney with "yet another opportunity to be heard." Id.; see D.C. Bar R. XI § 9(h). The DCCA issues the final order, imposing any disciplinary measures. Id. § 9(h).

B. Factual Background

Respondent Edward R. Martin, Jr. has been licensed to practice law in the District of Columbia since 2003. See Notice of Removal, Dkt. 1 at 60. President Trump appointed Mr. Martin to serve as interim U.S. Attorney for the District of Columbia in January 2025. Id. at 2. Martin subsequently served in different positions at the U.S. Department of Justice. Id.

Soon after taking office as interim U.S. Attorney, Martin wrote to William Treanor, then Dean of Georgetown University Law Center ("GULC"), accusing GULC of "continu[ing] to teach and promote DEI," an acronym for "diversity, equity, and inclusion." Notice of Removal at 43. Martin informed Dean Treanor that he had "begun an inquiry into this" and that no GULC students or affiliates would be hired by the D.C. U.S. Attorney's Office so long as GULC "continues to teach and utilize DEI[.]" Id. Dean Treanor wrote back that the First Amendment "guarantees that the government cannot direct what Georgetown and its faculty teach and how to teach it" and characterized Martin's letter as an unconstitutional "threat." Id. at 46–47.

The exchange between Martin and Treanor, which was widely reported, caught the attention of a GULC alum and retired judge in California. In a letter, the alum requested that

ODC investigate Martin. See Notice of Removal at 50–55; D.C. Bar R. XI § 6. District of Columbia Disciplinary Counsel Hamilton Fox, who heads ODC, soon obliged. In March 2025, Mr. Fox informed Martin that he was under investigation for violating D.C. Bar Rule XI § 2, which makes it professional misconduct to breach the attorney's oath to "support the Constitution of the United States of America." Id. at 36; D.C. Bar R. XI § 2(b). Fox requested written responses to several questions related to the GULC correspondence. Notice of Removal at 37. Three days later, Martin wrote several DCCA judges, copying the White House Counsel, attacking the propriety of Fox's investigation and declaring that he would not answer Fox's questions. Id. at 40–41.

C. Procedural Background

Fast forward one year. In March 2026, ODC filed a petition with the Board on Professional Responsibility instituting a formal disciplinary proceeding against Martin based on two counts. See Notice of Removal at 57 (petition); id. at 60 (charges). Count I alleged that the content of Martin's letter to Treanor violated the First and Fifth Amendments to the U.S. Constitution, Section 2 of D.C. Bar Rule XI, and Martin's "oath of office as an attorney admitted to the Bar of the District of Columbia Court of Appeals" to "support the Constitution of the United States of America[.]" Id. at 64 (internal quotation marks omitted). Count II alleged that Martin's communications with several judges on the DCCA violated D.C. Rule of Professional Conduct 3.5(b), which prohibits *ex parte* communications with a judge during a proceeding, and Rule 8.4(d), which proscribes conduct that seriously interferes with the administration of justice. Id. at 64–67. The petition indicated that the matter would be referred to a Hearing Committee. Id. at 58; D.C. Bar R. XI § 5(c) (Hearing Committee powers and duties). The petition explained that Martin enjoyed the right to present evidence, attend the hearing, and cross-examine

witnesses. Notice of Removal at 58–59. Martin responded that the Supremacy Clause of the U.S. Constitution deprives the Board of jurisdiction to adjudicate the charges. In his view, his correspondence with Treanor stemmed from his discretionary duties as interim U.S. Attorney to investigate violations of President Trump's January 2025 Executive Order 14151, which purports to eliminate DEI programs throughout the federal government, and various federal statutes. Id. at 70–71, 83.

In April 2026, while serving as U.S. Pardon Attorney, Martin filed a notice of removal to this Court. See Notice of Removal at 1–18. ODC now moves to remand the proceeding to the Board due to a lack of subject matter jurisdiction. Mot. to Remand, Dkt. 3. Martin opposes. Dkt. 7. The United States filed a statement of interest supporting removal. Gov't Stmt. of Interest ("Gov't Stmt."), Dkt. 6.[1]

## II. Legal Standards

Martin identifies a single source of federal jurisdiction: the federal-officer-removal statute, 28 U.S.C. § 1442.[2] That law authorizes an "officer" of the United States or its agencies

[1] Two other motions are also pending before the Court. Martin moved to disqualify ODC due to an alleged conflict of interest. See Mot. to Disqualify, Dkt. 11. Briefing on that motion was stayed pending resolution of the remand motion. Min. Order (July 14, 2026). Martin now asks the Court to reconsider the stay, claiming that the motion to disqualify must be resolved *before* the remand motion. Mot. for Reconsideration, Dkt. 16 at 2 (discussing Grimes v. District of Columbia, 794 F.3d 83, 89 (D.C. Cir. 2015)). In addition, Erwin Rosenberg, an attorney who has apparently been disbarred in several states, moves for permissive intervention. Amended Mot. for Permissive Intervention, Dkt. 20. Both motions must be denied as moot in light of the Court's finding that it lacks jurisdiction over this action. See Tymiak v. Comm'r Soc. Sec., 844 F. App'x 537, 546 (3d Cir. 2021).

[2] Martin's notice of removal cited several other statutes in addition to 28 U.S.C. § 1442. Notice of Removal, Dkt. 1 at 1 (citing 28 U.S.C. §§ 1331, 1441, and 1446). He failed to address those statutes in his briefing and thus abandoned any arguments that they supply jurisdiction. See Scenic Am., Inc. v. DOT, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) ("Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction."). The Court states no opinion on the forfeited grounds for removal. See United States v. Smith, 178

to have "removed," or transferred into federal court, a "civil action or criminal prosecution that is commenced in a State court and that is against or directed to" that officer "for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). The statute provides several definitions relevant here. "The terms 'civil action' and 'criminal prosecution' include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." Id. § 1442(d)(1). "The term 'State court' includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court." Id. § 1442(d)(6).

Federal law also governs remand. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" or sent back to the State court from which it came. 28 U.S.C. § 1447(c). "When a plaintiff seeks to have a case that has been removed to federal court remanded back to state court, the party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." Mizell v. SunTrust Bank, 26 F. Supp. 3d 80, 84 (D.D.C. 2014) (citation omitted). Courts in this District generally "construe[] removal jurisdiction strictly, favoring remand where the propriety of removal is unclear." Ballard v. District of Columbia, 813 F. Supp. 2d 34, 38 (D.D.C. 2011). However, "Section 1442(a) is to be liberally construed in light of its purpose. 'Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation' of the statute." Harris v. DOT, 122 F.4th 418, 422 (D.C. Cir. 2024) (quoting Willingham v. Morgan, 395 U.S. 402, 407 (1969)), cert. denied, 145 S. Ct. 2734 (2025).

F.4th 572, 603 n.31 (10th Cir. 2026) (noting the general rule that a court "cannot consider an argument a party never makes").

## III. Analysis

Section 1442(a) permits removal of a "civil action or criminal prosecution that is commenced in a State court and that is directed to . . . [a]ny officer . . . of the United States or of any agency thereof . . . for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). It is undisputed that, for purposes of the present motion, Mr. Martin was an "officer . . . of the United States," that he "act[ed] under color of [his] office," and that he has a colorable federal defense. See Reply at 3 n.2; Chevron USA Inc. v. Plaquemines Parish, La., 608 U.S. 1, 6 (2026). Jurisdiction in this Court thus turns on two questions: (1) whether the bar proceeding is a "civil action or criminal prosecution," and (2) whether the Board on Professional Responsibility—where this matter originated—counts as a "State court" for purposes of federal officer removal.

Answering *no* to the second question, the Court lacks jurisdiction and need not reach the first.

A. "Commenced in a State Court"

Is the Board a "State court" for purposes of removal? Section 1442(d)(6) defines "State court" as a term that "includes the Superior Court of the District of Columbia[.]" 28 U.S.C. § 1442(d)(6). This definition does not list the Board. The omission makes sense, ODC contends, because the Board is not a court but an agency of the DCCA. See Hr'g Tr. (Nov. 3, 2026) at 14:1–3. Martin, joined by the United States, responds that the Board *is* a "State court" for removal purposes because the Board is appointed and supervised by the DCCA, and its power derives from the DCCA's disciplinary jurisdiction. Resp. at 8 & n.1; Supp. Br., Dkt. 23 at 12–13.

ODC has the better argument. Let's start with the text. See Barrett v. United States, 607 U.S. 128, 140 (2026) (instructing that statutory interpretation "begin[s] with the text"). The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (citation and internal quotation marks omitted).

Section 1442 authorizes the removal of a "civil action or criminal prosecution that is *commenced in a State court*[.]" 28 U.S.C. § 1442(a)(1) (emphasis added). The statute's definition of "State court" includes "the Superior Court of the District of Columbia" but does not mention the Board (or the DCCA). Id. § 1442(d)(6). To determine whether the Board falls within the meaning of "State court," the Court looks first to that term's "ordinary meaning at the time Congress enacted the statute." Watson v. RNC, 609 U.S. 672, 682 (2026) (citation omitted). The relevant year appears to be 1948, when Congress enacted § 1442 as part of a comprehensive revision of the Judicial Code.[3] Section 1442 limited removal to matters that had

[3] The parties do not take positions on the year to which the Court should peg its construction of § 1442. A "State court" removal requirement for federal officers first appeared in an 1815 statute authorizing removal of "any suit or prosecution . . . *commenced in any state court*, against any . . . officer of the customs[.]" Customs Act of Feb. 4, 1815, ch. 31, § 8, 3 Stat. 195, 198–99 (emphasis added). Over the next century, Congress passed additional officer removal statutes, which generally limited removal to matters commencing in a State court. See Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 148 (2007) (recounting the history of officer removal); e.g., Act of Mar. 2, 1833, ch. 57, § 3, 4 Stat. 633 (authorizing removal "in any case where suit or prosecution shall be commenced in a court of any state"); Act of Mar. 3, 1863, ch. 81, § 5, 12 Stat. 755, 756–57 (authorizing removal of "any suit or prosecution, civil or criminal . . . commenced in any state court against any officer, civil or military"); Act of July 13, 1866, ch. 184, § 67, 14 Stat. 98, 171–72 (authorizing removal "where suit or prosecution shall be commenced in any court of any State against any [internal revenue] officer of the United States"); 39 Stat. 532, § 33 (authorizing removal of "any civil suit or criminal prosecution . . . commenced in any court of a State"). In 1948, Congress enacted the modern officer removal

"commenced in a State court," a requirement that still exists today. Act of June 25, 1948, ch. 646, § 1442(a), 62 Stat. 938; see Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 148–49 (2007) (discussing the 1948 recodification).

The ordinary meaning of "State court" undercuts the notion that Congress intended bar disciplinary proceedings originating with the Board to be removable. Around the time of § 1442's enactment in 1948, a "court" referred to "an official assembly legally met together for the transaction of judicial business; a judge or judges sitting for the hearing or trial of causes." *Court*, Webster's New International Dictionary 611 (2d ed. 1943); see Inst'l S'holder Servs., Inc. v. SEC, 142 F.4th 757, 766 (D.C. Cir. 2025) ("To determine the ordinary meaning of a legal term, we may look to contemporaneous dictionaries." (citation omitted)). Or as defined by another contemporary dictionary, a "court" is "a place where justice is administered." *Court*, 1 The New Century Dictionary of the English Language 337 (1944); see *Court*, Black's Law Dictionary 425 (4th ed. 1951) ("organ of the government, belonging to the judicial department,

---

statute, 28 U.S.C. § 1442. Although the breadth of defendants covered by the provision expanded, see Mesa v. California, 489 U.S. 121, 126 (1989), the source of a removable action did not: The law limited removal to matters that had "commenced in a State court," a requirement that still remains today. See Act of June 25, 1948, ch. 646, § 1442(a), 62 Stat. 938. In 2011, Congress passed the Removal Clarification Act, which amended the definition of "civil action or criminal prosecution." See Pub. L. 112-51, § 2(a), 136 Stat. 2114 (Nov. 9, 2011); see 28 U.S.C. § 1442(d)(1). Finally, in 2013, Congress added the definition of "State court" to § 1442(d)(6), settling that matters originating in the D.C. Superior Court can be removed. See Pub. L. 112–239, § 1087, 126 Stat. 1969 (Jan. 2, 2013).

For purposes here, the Court assumes that the key year is 1948, when Congress established the modern officer removal regime. To the extent that the earlier history of officer removal statutes informs any construction of § 1442, see Tidewater Oil Co. v. United States, 409 U.S. 151, 162 (1972), that history lends further support to the conclusion that "State court" does not encompass state agencies. After all, state agencies grew in number and power only in the early-twentieth century. See Miriam Seifter, *Understanding State Agency Independence*, 117 Mich. L. Rev. 1557–58 (2019). Nothing in the text, history, or purpose of § 1442 suggests Congress intended to depart from the longtime understanding of "State court."

whose function is the application of the laws to controversies brought before it and the public administration of justice."); 3 William Blackstone, Commentaries *23 ("A court is defined to be a place wherein justice is judicially administred." (citing 1 Coke, Institutes *58a)).

These definitions do not fit the Board on Professional Responsibility. The Board does not wield authority over "the administration of justice." *Court*, Black's Law Dictionary 425 (4th ed. 1951). As the DCCA has explained, the Board "does not make *decisions* regarding ethical violations; on the contrary, it makes *recommendations* to the court with respect to proposed discipline. Only the court has the authority to discipline attorneys." Sitcov v. D.C. Bar, 885 A.2d 289, 296 n.10 (D.C. 2005) (emphasis in original).

Nor does the Board's composition resemble that of a court. By definition, a court ordinarily requires "a *judge or judges* sitting for the hearing or trial of causes." *Court*, Webster's New International Dictionary 611 (2d ed. 1944) (emphasis added); see United States v. Finnell, 185 U.S. 236, 248 (1902) (collecting cases and concluding that "the presence of a judge is indispensable" to the definition of a "court"); Shoultz v. McPheeters, 79 Ind. 373, 375 (Ind. 1881) (quoting Bovier's Law Dictionary: "The one common and essential feature in all courts is a judge or judges, so essential, indeed, that they are even called *the court.*"). The Board's nine members are not judges. Compare Pub. L. 91-358, § 11-1501, 84 Stat. 491 (requiring presidential nomination and Senate confirmation of "all judges of the District of Columbia courts"), with D.C. Bar R. XI § 4(b) (explaining that the DCCA appoints Board members). By rule, two of its members cannot even be lawyers. D.C. Bar R. XI § 4(a). Likewise for the hearing committees that investigate misconduct in the first instance: Only two of its three members can be a lawyer. D.C. Bar R. XI § 4(e)(4). Adjudication by non-lawyers is a hallmark of agencies, not courts. See Max Radin, *The Courts and Administrative Agencies*, 23 Cal. L.

Rev. 469, 475 (1935) ("[T]he administrative agency is not composed—at any rate, not exclusively composed—of lawyers. The court is."); Robert M. Benjamin, Administrative Adjudication in the State of New York 174 (1942) ("It is a frequent characteristic of quasi-judicial proceedings that the hearing officer is not a trained lawyer[.]").

Nor does the creation of the Board resemble that of a "State court." Congress established the District of Columbia's court system, including the D.C. Superior Court and the DCCA. D.C. Court Reorganization Act, Pub. L. 91-358, §§ 11-101(2), 11-901, 84 Stat. 473, 560; see Ramos v. D.C. Dep't of Cons. & Regul. Affs., 601 A.2d 1069, 1073 n.6 (D.C. 1992) (recognizing that the D.C. Superior Court and DCCA are "Article I courts"). But no legislature created the Board. Rather, the DCCA established the Board by regulation, "in the exercise of its inherent authority over members of the legal profession practicing in the District." In re Stanton, 757 A.2d 87, 91 (D.C. 2000); In re Diviacchi, 308 A.3d at 1198 (calling the Board "an entity which t[he DCCA] created").

Then what is the Board, if not a court? A judicial agency. See Dkt. 11 at 23 (Martin calling the Board a "quasi-agency"). The DCCA does not recognize the Board as a court but instead as "an 'arm' of the Court of Appeals." Klayman v. Bd. on Pro. Resp., 333 A.3d 1157, 1162 n.2 (D.C. 2025); see Sitcov, 885 A.2d at 296 n.10. The DCCA has explained that the Board has "authority comparable to that of an administrative agency." Matter of Dwyer, 399 A.2d 1, 11 (D.C. 1979). And the DCCA reviews the Board's work as it does that of other agencies. See Matter of James, 452 A.2d 163, 169 (D.C. 1982) ("Our consideration of Board findings and recommendations is similar to our review of administrative agency decisions."); accord In re Chapman, 284 A.3d 395, 400 (D.C. 2022) (similar). That the Board is not recognized as a court either by Congress (which created the DCCA) or the District of

Columbia's highest court (which created the Board) supports the conclusion that the Board is not a "State court." Accord Wade v. Burns, 361 F. Supp. 3d 306, 311 (D. Conn. 2019) (holding that the plain meaning of § 1441 does not supply jurisdiction over a matter removed from the Connecticut Department of Insurance because it "is not a state court as understood within the State of Connecticut's court system"), aff'd, 803 F. App'x 433 (2d Cir. 2020); N.Y. State Div. of Hum. Rts. on Complaint of Hous. Opportunities Made Equal, Inc. v. Folino, No. 11-CV-569A, 2011 WL 11068867, at *2 (W.D.N.Y. July 11, 2011) (same as to the New York State Division of Human Rights); WHA Nineteen LLC v. Volkswagen of Am., Inc., No. 1:25-CV-175 (BKS/DJS), 2025 WL 1940142, at *4 (N.D.N.Y. July 15, 2025) (same as to the New York State Department of Motor Vehicles Safety and Business Hearing Bureau).[4]

It would be strange to conclude that Congress had an agency like the Board in mind when it limited removal to actions commencing in a "State court." Congress's use of the State-court removal requirement long predates the proliferation of agencies. See Univ. of Tenn. v. Elliott, 478 U.S. 788, 795 (1986) (concluding that 28 U.S.C. 1738, a statute also enacted as part of the 1948 Judicial Code reform and which "governs the preclusive effect to be given the judgments and records of state courts," does not apply to "state administrative factfinding" because the statute "antedates the development of administrative agencies" and thus "clearly does not represent a congressional determination that the decisions of state administrative agencies" should be reached). Nothing in the long history of federal-officer removal suggests that Congress was concerned with agency proceedings. See supra footnote 3; John S. Strayhorn, Jr.,

[4] Martin seems to acknowledge that the Board is not a State court, even if supervised by one. He calls the Board a "subordinate organization[]" and "the DCCA's 'adjunct factfinder' in Bar discipline cases." Dkt. 11 at 11–13 (quoting In re Kitchings, 779 A.2d 926, 932 (D.C. 2001)); see also id. at 23 (calling the Board a "quasi-agency"); id. at 25 (suggesting the Board exists to "vindicat[e] the DCCA's regulatory interest in the conduct of Bar members").

*The Immunity of Federal Officers from State Prosecutions*, 6 N.C. L. Rev. 123, 129–38 (1928). Nor does anything suggest that, in enacting and later amending § 1442, Congress was responding to a problem with agencies in general or bar proceedings in particular. See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 84 (1991) (discussing the terse legislative history of § 1442); James W. Moore, Moore's Judicial Code: Commentary 253–57 (1949). Neither Martin nor the United States argues that Congress in 1948 or thereafter intended to reimagine the "State court" removal requirement that had existed for more than a century. As the Supreme Court has explained several times, "a well-established principle governing the interpretation of provisions altered in the 1948 [Judicial Code] revision is that 'no change is to be presumed unless clearly expressed.'" Tidewater Oil Co. v. United States, 409 U.S. 151, 162 (1972) (quoting Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 227 (1957)). Surely, no change can be presumed where the statutory language at issue remained the same.

In sum, the plain meaning of "State court" indicates that a matter commenced in the Board cannot be removed. See Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1, 607 F.3d 1251, 1254–55 (10th Cir. 2010) (holding that the plain meaning of § 1441 requires the removed-from "entity must be a court . . . not an administrative agency" that "conducts court-like adjudications") (cleaned up); Erica B. Haggard, *Removal to Federal Courts from State Administrative Agencies: Reevaluating the Functional Test*, 66 Wash. & Lee L. Rev. 1831, 1867 (2009) (arguing that the plain meaning of the phrase "state court" in removal statutes "is not applicable to state agency proceedings, even if such agencies exercise quasi-judicial functions"). That forecloses subject matter jurisdiction in this Court.

B. Counterarguments

Resisting § 1442's plain text, Martin and the United States nonetheless contend that the Board counts as a "State court" for purposes of removal. In their view, Section 1442 permits removal from any entity that *functions* like a "State court." Because the Board sufficiently resembles a State court, so the argument goes, Section 1442 supplies federal jurisdiction over Martin's bar disciplinary proceeding.

This argument misses the mark. Recent case law undermines the viability of a functional approach to removal jurisdiction. And, even if it applied, a functional approach would not supply jurisdiction here.

*1. The Functional Approach Does Not Apply*

The "functional" approach to removal jurisdiction advanced by Martin and the United States focuses on whether the removed-from entity acts like a court. See Wilson v. Gottlieb, 821 F. Supp. 2d 778, 783 (D. Md. 2011) (describing the approach). Its leading articulation is found in Kolibash v. Committee on Legal Ethics of West Virginia Bar, 872 F.2d 571 (4th Cir. 1989). There, the Fourth Circuit found that § 1442 permitted the removal of a disciplinary proceeding against a U.S. Attorney in a West Virginia State Bar committee. In the Fourth Circuit's view, the committee counted as a "State court" because its "procedures are adjudicatory in nature" and it can "hold evidentiary hearings, subpoena witnesses, take testimony under oath in an adversary proceeding, . . . make[] factual findings and recommend[] attorney sanctions to the West Virginia Supreme Court of Appeals." Id. at 576. The same result should follow here, Martin argues, given the Board's similar powers and responsibilities.

But recent case law casts doubt on the continued vitality of the functional approach. Notably, there is "no case from the Supreme Court . . . holding that a case can be removed from

an administrative agency to federal court on the grounds that the administrative agency is functionally a court." Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1263 (3d. Cir. 1994). To the contrary, the Supreme Court has indicated that courts should use ordinary textual principles to interpret § 1442 by its plain meaning. Most recently, in Chevron USA Inc. v. Plaquemines Parish, 608 U.S. 1 (2026), the Court construed the phrase "for or relating to any act under color of such office" in 28 U.S.C. § 1442(a)(1). In doing so, the Court relied only on the "ordinary meaning" of the statutory language, eschewing any statutory history or extra-textual purpose. See Plaquemines, 608 U.S. at 11–14.

Even before Plaquemines, courts criticized a functional approach to interpreting the phrase "State court." See In re Clark, 678 F. Supp. 3d 112, 125–26 (D.D.C. 2023) (collecting cases), aff'd, No. 23-7073, 2024 WL 3385251 (D.C. Cir. July 12, 2024); cf. Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd., 108 F.4th 144, 155 n.5 (3d Cir. 2024) (similar). As the Ninth Circuit explained, the functional test is "judicially-developed," "goes beyond the language of the statute," and "changes the meaning and the reach of the statute." Or. Bureau of Lab. and Indust. ex rel. Richardson v. West Comms., 288 F.3d 414, 418–19 (9th Cir. 2002). Many courts have rejected it for those reasons. See, e.g., id.; Porter Tr., 607 F.3d at 1254; Smith v. Detroit Ent., LLC, 919 F. Supp. 2d 883, 894 (E.D. Mich. 2013); Civil Rights Div. v. Asplundh Tree Expert Co., No. 08-CV-60493, 2008 WL 2616154, at *5 (S.D. Fla. May 15, 2008).

By contrast, the "more recent trend [has moved] away from functional analysis and toward the plain language of the removal statute," Folino, 2011 WL 11068867, at *2—*i.e.*, the approach used by the Supreme Court in Plaquemines. The Court adopts that "better approach" here. Porter Tr., 607 F.3d at 1254. The bar disciplinary proceeding at issue did not "commence[] in a State court," and that fact alone "should be dispositive" of the remand motion.

Sun Buick, 26 F.3d at 1261 (remanding under § 1441 because "the Pennsylvania Board of Vehicles is, by definition, not a 'court'").

Undeterred, Martin posits that, in enacting the Removal Clarification Act of 2011, Congress "codified" the functional approach taken in Kolibash. Hr'g Tr. (Nov. 3, 2026) at 27:9–10; Supp. Br. at 14. Marshaling a House committee report, Martin suggests that the Act, which amended § 1442, aimed "to ensure that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding to a U.S. district court for adjudication." H.R. Rep. No. 112-17, at 1–2 (2011).

The Removal Clarification Act is largely irrelevant here. That enactment settled that a "civil action or criminal prosecution" for § 1442 purposes includes "any proceeding . . . to the extent that in such proceeding a judicial order . . . is sought or issued." Pub. L. 112-51, § 2(a); 28 U.S.C. § 1442(d)(1). And, in 2013, Congress added several definitional provisions clarifying that the D.C. Superior Court counted as a "State court" under § 1442. See Pub. L. 112–239, § 1087; 28 U.S.C. § 1442(d)(6). But those additions say nothing about the DCCA, courts of appeals generally, judicial agencies, or bar proceedings. Even more importantly, Congress did not eliminate the "State court" phrase. So although the Act "broadened the statute by authorizing removal" of "any proceeding," Plaquemines, 608 U.S. at 11, it did not eliminate the need for that proceeding to have "commenced in a State court," 28 U.S.C. § 1442(a).

Martin's "functional" reading of § 1442 also conflicts with the McDade Amendment, 28 U.S.C. § 530B, which Congress enacted in 1998 in response to the Department of Justice's effort to exempt government attorneys from state court disciplinary proceedings. See In re Clark, 678 F. Supp. 3d at 116–18 (recounting the history of the McDade Amendment). That statute requires government attorneys "be subject to State laws and rules . . . governing attorneys . . . to the same

extent *and in the same manner* as other attorneys in that State." 28 U.S.C. § 530B(a) (emphasis added). The phrase "in the same manner" suggests that disciplinary actions against government attorneys must proceed under the same procedures as disciplinary actions against other attorneys in that State. See *Manner*, Merriam Webster's Collegiate Dictionary 708 (10th ed. 1993) ("a mode of procedure or way of acting"); *Manner*, Black's Law Dictionary (6th ed. 1990) ("A way, mode, method of doing anything, or mode of proceeding in any case or situation").

As detailed above, the District of Columbia Bar Rules carefully define the procedures for attorney discipline: a hearing before a committee of two attorneys and a non-attorney, see D.C. Bar R. XI § 4(e)(4); review by the Board on Professional Responsibility, which consists of seven members of the D.C. Bar and two nonlawyers, id. § 4(a); and ultimate review by the DCCA, id. § 2(c). None of that procedural apparatus is available to a federal district court. Removal of bar disciplinary proceedings would require a district court to alter these procedures, and it is far from clear how it would go about doing so. Removal would therefore all but guarantee that a government attorney would be regulated in a *different* manner than other attorneys, not "in the same manner" as federal law requires. 28 U.S.C. § 530B(a). Martin's attempt to reconcile the McDade Amendment and the Removal Clarification Act reads the words "in the same manner" out of the statute. The Court sees no evidence that Congress intended to repeal the McDade Amendment by implication. See Epic Sys. Corp. v. Lewis, 584 U.S. 497, 498 (2018) (recognizing the "strong presumption that disfavors repeals by implication and that Congress will specifically address preexisting law before suspending the law's normal operations in a later statute" (cleaned up)).

What's more, Martin's reading would wreak havoc on the administration of state bar disciplinary proceedings and adjudications carried out by countless state agencies nationwide.

Both the diversity removal statute, 28 U.S.C. § 1441, and the federal-officer removal statute, § 1442, include a "State court" requirement. Although § 1441 is construed narrowly and § 1442 more broadly, Harris, 122 F.4th at 422, the same phrase ordinarily carries the same meaning in statutes enacted at the same time, Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995); Law v. Siegel, 571 U.S. 415, 422 (2014). Broadening the plain meaning of "State court" in § 1442 would thus broaden that same phrase in § 1441. "Because agencies often conduct court-like adjudications," an overbroad interpretation of "State court" would "dramatically expand federal removal jurisdiction to encompass many administrative agency proceedings[.]" Or. Bureau, 288 F.3d at 419; see Ann Woolhandler & Michael G. Collins, *Judicial Federalism and the Administrative States*, 87 Cal. L. Rev. 613, 702 (1999) ("Given the vast number of state proceedings that would qualify as 'formal adjudication' under state administrative law provisions, this would be a highly problematic development from the perspective of federalism[.]"). Neither Martin nor the United States offers a principle to distinguish the Board from the hundreds of other state agencies that perform adjudicative work or exercise delegated authority. The Court sees no evidence that Congress intended to usher in such a sea change for removability. See Fourco Glass, 353 U.S. at 227.

### 2. *The Functional Approach Would Not Supply Jurisdiction*

Even applying the functional approach here, the Court would conclude that the Board is not a "State court." The Board has authority to investigate misconduct, conduct factfinding, issue orders to obtain evidence, and mete out certain discipline. See D.C. Bar R. XI § 4(e)(1), (4), (7). But the Board's powers are circumscribed. See Sun Buick, 26 F.3d at 1265 (concluding that the "limited nature of the Board's powers" indicated it was not functionally a "State court"). The presidentially appointed judges of the DCCA—not the Board—have "exclusiv[e]

jurisdiction over bar-related matters," Klayman, 333 A.3d 115, and are "vested with final authority" to review discipline, In re Diviacchi, 308 A.3d at 1198. The Board administers D.C. Bar Rules related to the licensing and regulation of attorneys by investigating allegations of misconduct and issuing limited sanctions. See D.C. Bar R. XI § 4(e)(1), (4), (7); Doe v. Bd. on Pro. Resp., 717 F.2d 1424, 1428 (D.C. Cir. 1983) (recognizing the DCCA, "pursuant to its regulatory responsibility," delegated to the Board "authority to investigate alleged violations of the bar's disciplinary rules"). Again, the Board "does not make *decisions* regarding ethical violations; on the contrary, it makes *recommendations* to the court with respect to proposed discipline." Sitcov, 885 A.2d at 296 n.10 (emphasis in original). These features mean that the Board lacks the attributes of a court and therefore should not be considered one for purposes of removal.

* * *

The Board on Professional Responsibility is not a "State court" for purposes of § 1442, but rather a judicial agency. See Transcon. Gas, 108 F.4th at 152 (concluding a state environmental health board is not a "court" but a "quasi-judicial *agency*"). Because this matter commenced in the Board and not a "State court," the Court lacks jurisdiction.

While the Court "need go no further," Or. Bureau, 288 F.3d at 418, one last point bears mentioning. Martin's briefing, echoed by the United States, is infused with concerns about rogue state bar officials using disciplinary proceedings to interfere with legitimate federal law-enforcement activities. Resp. at 5, 21; Gov't Stmt. at 13–15. Relatedly, Martin emphasizes that he raised an immunity defense before the Board that should be decided at the earliest possible juncture, rather than waiting for a Hearing Committee or Board process to culminate in a proceeding before the DCCA. Resp. at 6; Hr'g Tr. (Nov. 3, 2026) at 36:17–24.

Both arguments are well taken. During his brief tenure as interim U.S. Attorney, Martin was entitled vigorously to pursue the Administration's law-enforcement priorities and to initiate *bona fide* investigations of potential violations of federal and D.C. law without the specter of local interference. See Wyoming v. Livingston, 443 F.3d 1211, 1222 (10th Cir. 2006) (discussing Supremacy Clause immunity) (citing In re Neagle, 135 U.S. 1 (1890)). Federal prosecutors in any administration should not be fettered by disciplinary investigations stemming only from federal enforcement priorities or the broad sweep of prosecutorial discretion. For his part, Fox defends the propriety of his office's charges, which include the rather atypical allegation that Martin improperly leveraged Department of Justice hiring opportunities to influence GULC's constitutionally protected pedagogical choices. Fox further explains that the Board can decide Martin's immunity defense prior to any future proceedings before the DCCA. Hr'g Tr. (Nov. 3, 2026) at 47:4–25. The Court will not enter this fray except to say that, should this matter proceed beyond Martin's likely appeal of this remand order, the Court would urge the Board to consider Martin's immunity arguments at the earliest possible juncture. See D.C. Bar R. XI §§ 4(e)(1), 4(e)(4), 5(c)(1), 9(j) (indicating that a Hearing Committee, the Board, and the DCCA all have some latitude to tailor disciplinary procedures to the exigencies of a particular matter). At the end of the day, however, the policy and practical implications of subjecting federal officers to state bar proceedings must give way to the language and intent of § 1442 and the McDade Amendment. And those authorities require remand of the proceeding at issue for the reasons the Court has explained.

## IV. Conclusion

For the foregoing reasons, the Court will grant ODC's motion to remand and remand this matter to the Board on Professional Responsibility. Martin's motion for reconsideration and Erwin Rosenberg's motion for permissive intervention will be denied as moot.

A separate Order will accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: November 24, 2026